

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2003

# Neo Gen Screening v. TeleChem Intl Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3154

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

## Recommended Citation

"Neo Gen Screening v. TeleChem Intl Inc" (2003). *2003 Decisions.* Paper 375.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/375

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos: 02-3154 and 02-4287

NEO GEN SCREENING, INC.;
NEO GEN SCREENING, L.P.,

Appellants

v.

TELECHEM INTERNATIONAL, INC.,
t/d/b/a
ARRAYIT.COM

_____

On Appeal From the United States District Court
for the Western District of Pennsylvania
District Court Judge: The Honorable William L. Standish
(D.C. Civ. No. 01-cv-02226)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 10, 2003

Before: NYGAARD, SMITH, <u>Circuit Judges,</u>
and IRENAS,* <u>District Judge</u>.

(Opinion Filed: July 11, 2003)

_____

_____
    *Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

_____

OPINION OF THE COURT
_____

SMITH, Circuit Judge:

## I.  FACTS

Neo Gen Screening, Inc. and Neo Gen Screening, L.P. (collectively "Neo Gen") are in the business of biochemical and molecular research and development, conducting newborn blood specimens tests for the detection of genetic metabolic disorders. TeleChem International, Inc. ("TeleChem") deals in microarray science and technology, which is the process of placing bits of DNA onto glass slides and then determining and pinpointing various genes and their functions.

In November of 1999, employees of Neo Gen and TeleChem met at a national micro-sciences symposium and discussed the possibility of a collaboration between the two companies.  In February, Neo Gen sent TeleChem a proposal to conduct joint research into the use of microarrays in newborn screening and the parties signed a Confidentiality Agreement.   The Confidentiality Agreement expressly stated that any breach of the agreement would entitle the non-breaching party to injunctive relief.

On March 24, 2000, TeleChem accepted Neo Gen's February proposal, agreeing to provide resources for the undertaking ("Agreement").  On March 30, Neo Gen applied for a small business research grant from the U.S. Department of Health and Human Services.

1

Then, the parties began to contemplate forming a new entity, NGS-ArrayIT, Inc., to develop and sell micro-array-based diagnostic genetic tests. To that end, in April 2000, the parties signed a Pre-Incorporation Agreement which contained provisions regarding capitalization, stock subscriptions, formal assignment of intellectual property and remedies for breach of the agreement. The Pre-Incorporation Agreement also stated that TeleChem would install a clean room at Neo Gen that would remain the property of TeleChem but under the custody of Neo Gen.

In June, Neo Gen wrote to TeleChem indicating that it felt many of TeleChem's responsibilities under the Pre-Incorporation Agreement were going unfulfilled. On the other side, Neo Gen never filed the Articles of Incorporation for NGS-ArrayIT, Inc, despite its promises to do so. Finally, on July 24, 2001 Neo Gen indicated that it elected to terminate the Agreement. TeleChem responded on August 21, that it declined to accept the termination letter, and wrote in November that it believed Neo Gen to be in breach.

## II.   PROCEDURAL POSTURE

On November 26, 2001 Neo Gen filed a four-count complaint for breach of contracts to develop microarray newborn screening technology, seeking damages, injunctive relief and a declaratory judgment. After the filing of the complaint, TeleChem attempted to retrieve the clean room and its equipment from Neo Gen. Neo Gen refused, and allowed Nerak Industries to inspect the room, as well as showing it to a job applicant.

2

Neo Gen also posted some information about microarray technology on its website. TeleChem filed a state law counterclaim for theft of trade secrets.

Telechem filed a motion for preliminary injunction on its counterclaim on April 15, 2002, asking the court to enjoin Neo Gen from using or disclosing TeleChem's clean room technology or TeleChem's multi-patient microarray manufacture trade secrets. At the close of defendant's evidence at the preliminary injunction hearing on May 15, Neo Gen moved to dismiss under Fed. R. Civ. P. 52, alleging that Telechem did not produce any evidence to show Neo Gen would not be harmed by an injunction. The District Court denied the motion as premature and directed Neo Gen to put on evidence that it would suffer harm. Neo Gen did not put on any such evidence, but renewed its motion to dismiss at the close of the hearing. On July 24, 2002 the District Court denied the motion to dismiss and granted a preliminary injunction in favor of Telechem to prevent Neo Gen's misappropriation of trade secretes related to certain microarray technology and the "clean room" facility owned by TeleChem.[1] On August 5, Neo Gen filed its notice of

_____

[1] The preliminary injunction stated:

Except as provided for in the Small Business Innovation Research Program (SBIR) grants obtained with TeleChem International, Inc.'s promise of support, Neo Gen Screening, Inc. and Neo Gen Screening, L.P. are hereby preliminarily enjoined and restrained until further order from:

(a) directly or indirectly utilizing any clean room technology belonging to TeleChem International Inc., including but not limited to, microarray diagnostic facility, materials, construction design, custom styling, unique presentation, functionality, use, lighting, filtration, environmental control, contamination minimization, ergonomics and work flow, clothing, staff training, record keeping,

3

appeal of this decision.

Neo Gen moved for modification or vacation of the July 24 injunction under Fed. R. Civ. P. 60(b), alleging that a patent containing information about TeleChem's microarray technology was published by the World Intellectual Property Organization ("WIPO") on January 17, 2002, three months before the application for temporary restraining order (the "Schena patent"), so the Court's conclusion that the patent was unpublished was an error and TeleChem committed a fraud upon the court. TeleChem responded that its failure to disclose the patent application was inadvertent, and there was protectable subject matter disclosed to Neo Gen beyond that encompassed within the Schena patent application. The District Court denied Neo Gen's motion in a November 5, 2002 order. The Court stated that any matter disclosed in a patent publication is no longer a trade secret, but concluded that, as a result, this information would not be covered by part (d) of its injunction order. The Court set the bond for TeleChem at $10,000. On

---

materials compatibility, artistic styling and custom appearance;

(b) directly or indirectly engaging in the further unauthorized disclosure or display of the clean room technology referred to in subparagraph (a) hereof;

(c) directly or indirectly engaging in the further unauthorized acquisition of the clean room technology referred to in subparagraph (a) hereof; and

(d) directly or indirectly utilizing any microarray manufacture trade secrets belonging to TeleChem International, Inc, including but not limited to protocols, patent pending methods, procedures, robotics, automation, software design, and implementation, patented pin and printhead selection, maintenance, cleaning and storing printing buffers or surfaces, environmental control, microarray quality control and quality assurance, surface energetics, substrate coupling chemistry, storage and processing, barcoding, sample tracking and throughput.

4

November 14, Neo Gen filed its Notice of Appeal of this decision.

## III. JURISDICTION

The District Court had diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1292(a)(1) (appellate jurisdiction over interlocutory orders granting injunctions and refusing to modify or dissolve injunctions), both with respect to the July 24 and November 5 decisions.

## IV. STANDARD OF REVIEW

In considering the grant of a preliminary injunction and denial of a motion to modify a preliminary injunction, we review legal issues de novo, factual findings for clear error, and the ultimate decision to grant the injunction and deny modification for abuse of discretion. *Maldonado v. Houstoun*, 157 F.3d 179, 183 (3d Cir. 1998) (reviewing grant of a preliminary injunction); *Favia v. Indiana University of Pennsylvania*, 7 F.3d 332, 340 (3d Cir. 1993) (reviewing denial of motion to modify preliminary injunction). A district court's determination of whether a party has "unclean hands" and the amount of bond are also reviewed for abuse of discretion. *See In re New Valley Corp.*, 181 F.3d 517, 523 (3d Cir. 1999); *Frank's G.M.C, Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 108 (3d Cir. 1988).

## V. LEGAL ANALYSIS

*A. Preliminary Injunction*

In order for a district court to grant an injunction, the moving party must show: 1) it is likely to succeed on the merits and 2) denial will result in irreparable harm to the moving party. *Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263 (3d Cir. 2000); *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998); *Opticians Assoc. v. Independent Opticians*, 920 F.2d 187, 192 (3d Cir. 1990). In addition the District Court should consider whether: 3) granting the injunction will not result in irreparable harm to the non-moving party and/or harm to the moving party outweighs the harm to the non-moving party and 4) granting the injunction is in the public interest. *See id.; see also Acierno v. New Castle Co.*, 40 F.3d 645, 647 (3d Cir. 1994).

Neo Gen argues that TeleChem failed to introduce any evidence showing the injunction would not result in irreparable harm to Neo Gen. In addition, it argues that the denial would not result in irreparable harm to TeleChem, because monetary compensation would be sufficient to rectify any injury, and the Pre-Incorporation Agreement contained a liquidated damages clause providing for such monetary damages. Finally, it argues that TeleChem is unlikely to succeed on the merits by showing that the clean room was a protected trade secret because it was susceptible to reverse engineering and Neo Gen was able to obtain one from a third party.

As a court sitting in equity, the District Court's task was to weigh the four factors, but it was not incumbent on TeleChem to prevail on all four factors, only on the overall need for an injunction. A sufficiently strong showing on either the likelihood of success

6

or irreparable harm may justify an injunction, though a petitioner's showing on the other factors may be lacking. Neo Gen is correct that the burden of introducing evidence to support a preliminary injunction is on the moving party with respect to the first two issues; however, the same is not true of the second two issues. *See Acierno*, 40 F.3d at 653 (noting that the burden is on the moving party on the first two issues, but the district court should itself consider the second two). As a matter of logic, the moving party cannot have the burden to introduce evidence showing the harm that will be suffered by the opposing party if the injunction is issued. Rather, the moving party has the burden to show the harm it will suffer if no injunction issues, and if the non-moving party feels it will suffer greater harm or irreparable harm from the injunction, it has the burden to so demonstrate. Based on the facts of record, there does not appear to be any immediate threat of irreparable harm to Neo Gen from not being allowed to disclose these secrets, especially since it is allowed to continue using the technology in its currently ongoing small business grants.

In contrast, the disclosure of trade secrets would result in irreparable harm to TeleChem that would not be remedied by monetary damages. *Compare BP Chemicals*, 229 F.3d at 263 (where witness testified that if defendants used trade secrets they illegally obtained from BP in building their plant they would damage BP's reputation, its credibility and ability to license its technology, such injuries were difficult to calculate and money damages would be inadequate); *Campbell Soup Co. v. ConAgra, Inc.*, 977

7

F.2d 86, 92 (3d Cir. 1992) (noting that "a threat of disclosure [of trade secrets] may establish immediate irreparable harm"); *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) (holding that loss of trade secrets was an irreparable harm that could not be measured in money because "a trade secret once lost is, of course, lost forever"); *with Acierno*, 40 F.3d at 647 (reversing grant of preliminary injunction compelling county to issue a building permit because plaintiff would not suffer irreparable harm by delaying building and injunction did not maintain the status quo). This conclusion is further supported by Dr. Schena's testimony that TeleChem's commercial interests will be destroyed if certain trade secrets are published. The existence of a liquidated damages clause in the Pre-Incorporation Agreement does not show that TeleChem will not suffer irreparable harm if its trade secrets are disclosed, especially since the Confidentiality Agreement expressly stated that any breach of the agreement would entitle TeleChem to injunctive relief.

Finally, Neo Gen is incorrect that the details of TeleChem's clean room cannot be a trade secret. Under Pennsylvania law, a trade secret "may consist of any formula, pattern device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Felmee v. Lockett*, 351 A.2d 273, 277 (Pa. 1976). While the general concept of a clean room is not protected, clean rooms may differ in the details of their construction and efficiency, and it is those details that can provide a competitive advantage and are

8

protected. Based on the undisputed fact that TeleChem took elaborate steps to construct the clean room in secrecy, that it spent a great deal of money on construction, and that it created a confidentiality agreement which covered the clean room, the District Court did not err in determining that the clean room was a trade secret. *See Christopher M's Hand Poured Fudge, Inc.*, 699 A.2d 1272, 1275 (Pa. Super. 1997) (secrecy measures and the money expended are among the factors to be considered in determining whether something is a trade secret). While a product susceptible to reverse engineering cannot be a trade secret, the details of TeleChem's clean room would not be susceptible to reverse engineering because such engineering is only available where the party obtained the technology through a "marketed product" and not pursuant to a confidentiality agreement. *See, e.g., Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1242 (Fed. Cir. 1989); *SI Handling Sys. v. Heisley*, 753 F.2d 1244, 1255 (3d Cir. 1995).

Accordingly, the District Court's decision to grant the preliminary injunction was not an abuse of discretion.

### B. Modification or Vacation of Injunction

Fed. R. Civ. P. 60(b) permits the district court to grant relief from a final judgment if the party seeking modification can show fraud, misrepresentation, or "a significant change in either factual conditions or in law" that renders continued operation of the judgment inequitable. Accordingly, we must "focus our inquiry on the circumstances that led to the entry of the injunction and compare them with current circumstances for the

9

purpose of deciding whether continuation of the injunction without the requested modification would be so inequitable that the district court's refusal to grant the motion to modify is reversible error." *Favia*, 7 F.3d at 340.

Neo Gen claims it was entitled to modification based on fraud and changed circumstances. First, Neo Gen argues that TeleChem committed a fraud upon the court by knowingly and intentionally failing to disclose the published patent application, and its injunction is barred by the doctrine of unclean hands. *See Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933) (party cannot be awarded equitable remedy where it has gained an advantage by fraud or deceit); *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) (same). However, Neo Gen cites to no evidence which shows that TeleChem's omission was knowing or intentional, such that the District Court's implicit conclusion to the contrary would be clear error. Absent such evidence, we cannot conclude that the District Court abused its discretion in rejecting the claim that an injunction was barred by TeleChem's "unclean hands."

Neo Gen also argues that even if the injunction stands, it must be modified because the non-secret Schena patent material is still encompassed within the language about "pending patents." Moreover, it argues that TeleChem has not shown any evidence of any microarray technology to be protected beyond what is in the published material, which would mean that TeleChem would be unlikely to prevail on the merits because of changed circumstances. Neo Gen's first argument is wrong; the injunction prohibits only

10

the utilization of microarray trade secrets, so any material contained in the published patent application is not a trade secret addressed by the injunction. Second, by rejecting Neo Gen's motion, the court implicitly found that there continued to be some microarray trade secrets that were not published. Neo Gen does not point to any evidence demonstrating that this finding was clear error.[2] Thus, it was not an abuse of discretion for the District Court to refuse to modify the injunction order.

*C. Abuse of Discretion in Setting the Bond*

Fed. R. Civ. P. 65(c) requires that before granting a preliminary injunction the court must require the applicant to post a bond "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

Neo Gen argues that the amount of the bond was insufficient to cover the potential harm Neo Gen may incur and constituted an abuse of discretion. Specifically, Neo Gen claims that the bond should have been set based on the liquidated damages clause in the Pre-Incorporation Agreement of $1,000,000. However, there was nothing in the Pre-Incorporation agreement that permitted Neo Gen to disclose TeleChem's trade secrets, so even if the liquidated damages clause was compensatory and not punitive, it was unrelated to any harm suffered by Neo Gen here. As noted, *supra*, Neo Gen produced no

---

[2] In addition, if it is true that TeleChem does not have any microarray secrets that were not revealed in the Schena patent application, this portion of the injunction will have absolutely no effect on Neo Gen, so its continuation would not be inequitable.

11

evidence of any irreparable harm to it from the injunction. Therefore, a nominal bond was appropriate here.

Finally, Neo Gen points out that the District Court set the bond for the temporary restraining order ("TRO") at $10,000, and the Eighth Circuit has found that a trial court abuses its discretion by not examining the need for additional bond after setting the bond for a TRO. *See Rathman Group v. Tannenbaum*, 889 F.2d 787 (8th Cir. 1989). However, unlike the court in *Rathman*, the District Court in this case did set an additional bond; it just happened to set the injunction bond at the same amount as the TRO. Absent any evidence by Neo Gen showing that its potential harm would be greater than $10,000, we cannot find that the District Court abused its discretion in setting the bond.

## VI.    CONCLUSION

The July 24 and November 5, 2002 orders of the District Court shall be affirmed.

_____

TO THE CLERK:

Please file the foregoing Opinion.


/s/ D. Brooks Smith
Circuit Judge