**CAROLINE FAWKES, in her official capacity as SUPERVISOR OF ELECTIONS, VIRGIN ISLANDS JOINT BOARD OF ELECTIONS, BOARD OF ELECTIONS, ST. THOMAS-ST. JOHN, and KEVIN A. RODRIGUEZ a/k/a KEVIN A. RODRIQUEZ, Appellants/Defendants**
**v.**
**JANELLE K. SARAUW and BRIGITTE BERRY, Appellees/Plaintiffs**

S. Ct. Civil No. 2016-0106
Supreme Court of the Virgin Islands
January 4, 2017

237

CHRISTOPHER A. KROBLIN, ESQ., MARJORIE B. WHALEN, ESQ., Kellerhals Ferguson Kroblin PLLC, St. Thomas, USVI, *Attorneys for Appellant Kevin A. Rodriquez.*

EDWARD L. BARRY, ESQ., St. Croix, USVI, *Attorney for Appellees.*

CLAUDE EARL WALKER, ESQ., Attorney General, St. Thomas, USVI, *Attorney for Amicus Curiae Government of the Virgin Islands*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(January 4, 2017)

PER CURIAM. Appellant Kevin A. Rodriquez appeals from the Superior Court's December 29, 2016 opinion and order, which entered a preliminary injunction enjoining him from taking the oath of office as a member of the 32nd Legislature. For the reasons that follow, we affirm.

## I. BACKGROUND

On November 8, 2016, the Virgin Islands held its general election to elect members of the 32nd Legislature. Rodriquez and Janelle Sarauw were among eighteen candidates seeking seven seats to represent the District of St. Thomas/St. John in the 32nd Legislature. The unofficial results placed Rodriquez in sixth place — thus earning him a seat in the 32nd Legislature — and Sarauw in eighth place.

On November 21, 2016, the day before the St. Thomas-St. John Board of Elections was scheduled to certify the election results, Sarauw received an anonymous e-mail containing a portion of a bankruptcy petition Rodriquez filed with the United States Bankruptcy Court for the Middle District of Tennessee on January 25, 2016, in which he swore, under penalty of perjury, that he was a resident of Tennessee. Later that same day, Brigitte Berry — an unpaid volunteer for Sarauw's campaign — filed a letter with the Supervisor of Elections, Caroline Fawkes, together with the bankruptcy petition, alleging that Rodriquez is not qualified to serve in the 32nd Legislature, for section 6 of the Revised Organic Act of 1954 provides that "[n]o person shall be eligible to be a member of the legislature . . . who has not been a bona fide resident of the Virgin Islands for at least three years next preceding the date of his election." 48 U.S.C. § 1572.

Notwithstanding Berry's letter, the Board of Elections certified the election results on November 22, 2016. Shortly thereafter, Berry wrote another letter challenging Rodriquez's candidacy, which she directed to all members of the Board of Elections. In a letter dated November 22,

2016, but not received until several days later, Fawkes advised Berry that the time period to contest Rodriquez's candidacy with the Board of Elections had passed. *See* 18 V.I.C. § 412.

Sarauw and Berry filed a complaint in the Superior Court on December 9, 2016, along with an emergency motion for a preliminary injunction. In their complaint, they alleged that Rodriquez is not legally qualified to serve in the Legislature, in that he was a resident of Tennessee for at least a portion of the three-years preceding the November 8, 2016 general election, and requested that the Superior Court declare him ineligible to serve in the 32nd Legislature and enjoin him from such service, and compel Fawkes and the Board to de-certify him as a qualified candidate.

The Superior Court held a hearing on the preliminary injunction motion on December 16, 2016, and permitted the parties to file written closing arguments and replies, respectively, on December 21, 2016, and December 22, 2016. On December 29, 2016, the Superior Court issued an opinion and order granting the motion for a preliminary injunction, enjoining Rodriquez from taking the oath of office for the 32nd Legislature, scheduled for January 9, 2017, and scheduling a trial on the merits for January 23, 2017. Rodriquez timely filed his notice of appeal on December 30, 2016, and this Court, in an order entered on the same day, ordered an expedited briefing schedule. In an order signed on January 1, 2017, but entered on January 3, 2017, the Superior Court, upon Sarauw and Berry's motion, re-scheduled the trial on the merits to January 4, 2017, so that the matter may be resolved before the swearing-in of the 32nd Legislature on January 9, 2017.[1]

The parties filed their respective principal briefs on January 2, 2017, and January 3, 2017. On January 4, 2017, the Government of the Virgin Islands moved to appear as an *amicus curiae* in support of Sarauw and Berry, which this Court granted in an order issued on the same day. Rodriquez filed his reply brief later that same day.

---

[1] In his appellate brief — which, pursuant to the expedited briefing schedule, was filed on January 2, 2017 — Rodriquez alleged that the Superior Court committed error by scheduling the trial for January 23, 2017, despite being aware that the 32nd Legislature would be sworn-in on January 9, 2017. Because the Superior Court has subsequently re-scheduled the trial to January 4, 2017, we express no opinion as to whether the Superior Court possessed the authority to conduct the trial on the merits after the swearing-in of the 32nd Legislature.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Pursuant to the Revised Organic Act of 1954 and the Virgin Islands Code, this Court exercises appellate jurisdiction over all appeals from the final decisions of the Superior Court of the Virgin Islands. 48 U.S.C. § 1613a(d); 4 V.I.C. § 32(a). Although this Court may ordinarily only hear appeals from a final judgment, it also has jurisdiction to hear appeals from "[i]nterlocutory orders of the Superior Court of the Virgin Islands . . . granting, continuing, modifying, refusing or dissolving injunctions." 4 V.I.C. § 33(b)(1). Because the Superior Court's December 29, 2016 opinion granted Sarauw and Berry's motion for a preliminary injunction, this Court may exercise jurisdiction over this appeal even if other matters, such as their request for a permanent injunction, remain pending in the Superior Court. *Yusuf v. Hamed*, 59 V.I. 841, 846 (V.I. 2013) (citing *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012)).

When reviewing the grant of a preliminary injunction, this Court exercises plenary review of the Superior Court's application of law, while its factual findings are reviewed only for clear error. *Wessinger v. Wessinger*, 56 V.I. 481, 486 (V.I. 2012) (citing *Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 Fed.Appx. 550, 553 (3d Cir. 2003)). However, the ultimate decision as to whether to grant or deny an injunction is reviewed for abuse of discretion. *Petrus*, 56 V.I. at 554; *see also Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011) ("An abuse of discretion 'arises only when the decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' " (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003))).

### B. Preliminary Injunction

■ In his appellate brief, Rodriquez maintains that the Superior Court erred when it granted Sarauw and Berry's motion for a preliminary injunction. Rodriquez correctly recognizes that when considering a motion for a preliminary injunction, the Superior Court must consider four relevant factors:

(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result

in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Marco St. Croix, Inc. v. V.I. Hous. Auth.*, 62 V.I. 586, 590 (V.I. 2015) (quoting *Yusuf*, 59 V.I. at 847). In addition, this Court has explained that although the party requesting a preliminary injunction "has the burden of making some showing on all four injunction factors," it remains the responsibility of "the Superior Court [to] evaluate the moving party's showing on all four factors under a sliding-scale standard," in which "the Superior Court must make findings on each of the four factors and determine whether — when the factors are considered together and weighed against one another — the moving party has made 'a clear showing that [it] is entitled to [injunctive] relief.' " *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 557 (V.I. 2015) (quoting *Yusuf*, 59 V.I. at 847).

█ █ Although the Superior Court addressed all four of these factors in its December 29, 2016 opinion, Rodriquez only challenges the Superior Court's ruling as to the first factor of the preliminary injunction standing — the likelihood that Sarauw and Berry will succeed on the merits.[2] According to Rodriquez, the Superior Court erred when it determined that Sarauw and Berry were likely to succeed on the merits. Specifically, Rodriquez argues that the Superior Court (1) erred when it determined that Sarauw and Berry's action was not barred by the doctrine of laches; (2) applied the incorrect standard for determining whether an individual is a bona fide resident of the Virgin Islands; and (3) improperly weighed the evidence to determine that he was not a bona fide resident of the Virgin Islands for the requisite three-year period. We address each claim in turn.[3]

---

[2] In his appellate brief, Rodriquez does not address the third and fourth factors — the balancing of the harms, and the public interest — at all, and thus any challenge to the Superior Court's findings that those factors support issuance of a preliminary injunction is waived. *See* V.I.S.CT.R. 22(m) ("Issues that were . . . raised or objected to but not briefed, . . . are deemed waived for purposes of appeal."). And while Rodriquez, in a single sentence and without citing to any authority, states that the Superior Court's finding of irreparable harm should be set aside on the basis that, absent an injunction, Sarauw and Berry would lose their right to judicial review "[b]ecause [Rodriquez]'s residency can still be challenged post certification in the Legislature," (Appellant's Br. 28), this, too, is insufficient to bring this issue properly before this Court for appellate review. *See* V.I.S.CT.R. 22(m) ("Issues that . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal.").

[3] During the Superior Court proceedings, Rodriquez raised several other issues in a motion to dismiss, which the Superior Court denied in a separate opinion and order dated December

243

## 1. *Laches*

██ "Laches is an affirmative defense . . . that bars a plaintiff's claim where there has been an inexcusable delay in prosecuting the claim in light of the equities of the case and prejudice to the defendant from the delay." *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 330 (V.I. 2007). "[T]he question of laches presents a mixed question of law and fact," *Haynes v. Ottley*, 61 V.I. 547, 576 n.18 (V.I. 2014), and is therefore "a question primarily addressed to the discretion of the trial court." *Daniel*, 49 V.I. at 329 (quoting *Churma v. U.S. Steel Corp.*, 514 F.2d 589, 592-93 (3d Cir. 1975)).

In its December 29, 2016 opinion, the Superior Court held that laches did not bar Sarauw and Berry's claims. The Superior Court noted that — unlike *Daniel*, which involved a challenge to election procedure by a losing candidate — the instant case involved a challenge to a candidate's qualifications that was not readily discernable prior to the election. Moreover, the Superior Court found credible Sarauw and Berry's testimony that they were unaware of the bankruptcy petition until receipt of the anonymous e-mail on November 21, 2016,[4] as well as Berry's testimony that she filed her letter challenging Rodriquez's residency with Fawkes later that very same day.

---

29, 2016. However, even though they may relate to the likelihood of success on the merits factor, Rodriquez has elected not to discuss any of these issues in his brief, but instead maintains that he "reserves his right to file a petition for permissive review and until doing so he reserves all his grounds for dismissal." (Appellant's Br. 6 n.1.) Nevertheless, it is well-established that when a non-appealable order is inextricably intertwined with an appealable order, the non-appealable order may be challenged as part of the same appeal. *People v. Ward*, 55 V.I. 829, 839-40 (V.I. 2011). Therefore, because Rodriquez could have raised these issues on appeal to this Court, but instead chose not to do so, those issues are waived for purposes of this appeal from the preliminary injunction. *See* V.I.S.Ct.R. 22(m) ("Issues that were . . . raised or objected to but not briefed, or . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal."). In any case, on January 4, 2017, Rodriquez filed a petition for permission to appeal the denial of the motion to dismiss pursuant to 4 V.I.C. § 33(c), which this Court denied in an order issued on the same day.

[4] Although Rodriquez maintains that the anonymous e-mail was never introduced into evidence at the preliminary injunction hearing, "[i]t is well established that a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," and thus "hearsay materials are often received in preliminary injunction proceedings." *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (collecting cases).

■ ■ We agree with the Superior Court that the *Daniels* case is inapposite to this matter, in that it involved a challenge only to the conduct of an election, rather than a candidate's eligibility to hold office. This Court has already held that a challenge to a candidate's qualification to hold office may be brought after the date of the election, whether pursuant to 5 V.I.C. § 80, an action for writ of quo warranto, or otherwise. *Haynes v. Ottley*, 61 V.I. 547, 569-71 (V.I. 2014) (collecting cases). Importantly, courts have repeatedly held that the equitable defense of laches does not apply to an action to challenge the qualifications of an individual to hold office. *See, e.g., People ex rel. Phelps v. Kerstein*, 413 Ill. 333, 108 N.E.2d 915, 919 (Ill. 1952) ("It is generally held to be the law in all jurisdictions that the defenses of laches and estoppel are not available where an information or complaint in quo warranto is filed."); *O'Hanlon v. City of Danbury*, No. DBDCV074008131S, 2010 Conn. Super. LEXIS 76, at *11 (Conn. Super. Ct. Jan. 7, 2010) (unpublished) ("[T]he doctrine of laches defense fails because a quo warranto action cannot be waived by the passage of time due to the public's interest in the legality of its government officers."). As one court succinctly explained, the second prong of the laches inquiry — prejudice to the defendant — can never be satisfied when a candidate's residency is challenged, since if the candidate does not meet the residency requirement, then "he is not eligible to run for state legislative office . . . regardless of the timing of the challenge to his eligibility." *Melendez v. O'Connor*, 654 N.W.2d 114, 117 (Minn. 2002). Consequently, the Superior Court committed no error when it held that laches did not bar Sarauw and Berry's complaint.[5]

---

[5] Moreover, even if we were to agree with Rodriquez that laches could bar a challenge to a candidate's eligibility to hold office — which we do not — we emphasized in *Haynes* and *Daniel* that laches presents a mixed question of law and fact to which the Superior Court is owed considerable deference. In this case, the Superior Court expressly found that Sarauw and Berry did not acquire any knowledge to cast doubt on Rodriquez's residency in the Virgin Islands until Sarauw received the anonymous e-mail containing the pertinent portion of Rodriquez's bankruptcy filing on November 21, 2016, and that Berry brought the matter to Fawkes's attention later that very same day. Although Rodriquez notes that Sarauw testified that she was generally aware that Rodriquez had filed for bankruptcy, this is not sufficient for this Court to set aside the Superior Court's factual finding. *Daniel*, 49 V.I. at 329 ("[T]he appellate court must accept the factual determination of the fact finder unless the determination 'either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.' ") (quoting *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91-92 (3d Cir. 1992)).

245

## 2. *Legal Standard for Bona Fide Residency*

In its December 29, 2016 opinion, the Superior Court correctly recognized that the phrase "bona fide resident," as used in section 6(b) of the Revised Organic Act, is not defined. To determine the meaning of the phrase, the Superior Court borrowed the definition of "bona fide resident" adopted by the United States Court of Appeals for the Third Circuit in *Vento v. Dir. of V.I. Bureau of Internal Revenue*, 715 F.3d 455, 58 V.I. 753 (3d Cir. 2013), for purposes of a provision in the United States Internal Revenue Code pertaining to the filing of income tax returns by Virgin Islands residents. *See* 26 U.S.C. § 932. Relying on *Vento*, the Superior Court determined that the following four categories governed a determination of whether one is a bona fide resident of the Virgin Islands: (1) intent; (2) physical presence; (3) social, family, and professional relationships; and (4) the party's own representations. 715 F.3d at 467-68.

In their respective appellate briefs, Rodriquez, Sarauw, and Berry all agree that the Superior Court erred when it relied on *Vento* to determine the meaning of the phrase "bona fide resident" as used in section 6(b) of the Revised Organic Act. According to Rodriquez, the *Vento* test for determining Virgin Islands residency for tax purposes was superseded by both statute and Department of Treasury regulation. However, Rodriquez also maintains "it is doubtful that the legislature intended said tests to be applied to determine whether an individual was a bona fide resident of the Virgin Islands," since "under the taxpayer residency test, it's black letter law that a domiciliary of another state may qualify as a bona fide resident of the Virgin Islands," and that the appropriate test may be determining one's domicile. (Appellant's Br. 17.) Sarauw and Berry agree with Rodriquez that the test for determining whether an individual is a bona fide resident for tax purposes cannot be the same test to determine whether one is a bona fide resident for purpose of serving in elected office, since the *Vento* court itself held that the test to determine taxpayer residency provides that "a person can be a resident of more than one place at the same time." 58 V.I. at 773. Rather, Sarauw and Berry contend that "bona fide resident," as used in section 6(b) of the Revised Organic Act, is synonymous with domicile. (Appellee's Br. 9.) The Government, however, maintains in its *amicus curiae* brief that the *Vento* test is the appropriate one for determining bona fide residency, although it does not provide any reasoning to support its position.

■ We agree with the parties that the Superior Court erred when it relied upon the definition of "bona ride resident," as that phrase is used in the Internal Revenue Code, to determine the meaning of "bona fide resident" in section 6(b) of the Revised Organic Act. As the Supreme Court of the United States has explained, the meaning of the term resident in a statute "may vary according to context," although it "generally requires both physical presence and an intention to remain." *Martinez v. Bynum*, 461 U.S. 321, 330, 103 S. Ct. 1838, 75 L. Ed. 2d 879 (1983); *see also, Smith v. Smith*, 45 Cal. 2d 235, 288 P.2d 497, 499 (Cal. 1955) ("Residence, as used in the law, is a most elusive and indefinite term. . . . To determine its meaning, it is necessary to consider the purpose of the act.").

■ Because the Revised Organic Act serves as a de facto constitution for the Virgin Islands, to determine the meaning of an undefined term, we should consider how similar language has been used in other state constitutions. *Bryan v. Fawkes*, 61 V.I. 201, 232 (V.I. 2014); *Browne v. People*, 50 V.I. 241, 259-63 (V.I. 2008). State courts have repeatedly held that the phrase "bona fide resident" or a similar term, when used in the elections context, is synonymous with domicile.[6] *See, e.g., In re Initiative Petition No. 379*, 2006 OK 89, 155 P.3d 32, 41 (Okla. 2006) ("The terms residency and domicile are interchangeable and synonymous . . . . A bona fide resident for purposes of [the Oklahoma Constitution] is equated with a person's honest intent to make a place

---

[6] In addition, the Legislature has provided that, for purposes of title 18 of the Virgin Islands Code, " 'domicile' means a registrant's legal residence as determined in 18 V.I.C. [§] 262," 18 V.I.C. § 1(a), with section 262 further providing that:

> domicile . . . shall be determined in accordance with the following rules:
>
> (1) Every person has a domicile.
>
> (2) There can be but one domicile.
>
> (3) Legal residence or domicile is the place where a person habitually resides when not called elsewhere to work or for some temporary purpose and to which such person returns in season for rest.
>
> (4) Legal domicile or residence may be changed by joinder of act and intent.
>
> (5) A domicile cannot be lost until a new one has been acquired.

18 V.I.C. § 262(a). Although this definition is not binding, given that the Legislature does not possess the authority to enact a statute that defines a phrase found in the Revised Organic Act, *see Bryan*, 61 V.I. at 230 (citing *Limtiaco v. Camacho*, 549 U.S. 483, 489 n.2, 127 S. Ct. 1413, 167 L. Ed. 2d 212 (2007)), it is consistent with how other courts of last resort have interpreted similar language in their constitutions and election laws.

one's residence or domicile, a conscious decision to make a location an individual's home."); *White v. Manchin*, 173 W. Va. 526, 318 S.E.2d 470, 481-82 (W. Va. 1984) ("Turning to the issue of the term 'resident' as used in [the West Virginia Constitution], we note initially that in West Virginia, the term 'residence' is synonymous with the term 'domicile' for election law purposes.") (collecting cases); *Osborn v. O'Barr*, 401 So.2d 773, 775 (Ala. 1981) ("[T]he terms 'legally resides,' 'inhabitant,' 'resident,' etc. when used in connection with political rights are synonymous with domicile.") (quoting *Mitchell v. Kinney*, 242 Ala. 196, 5 So.2d 788 (Ala. 1942)); *Dane v. Board of Registrars*, 371 N.E.2d 1358, 1364 (Mass. 1978) ("The word 'resided,' as it appears in our constitutional and statutory provisions relating to voter qualification, has long been construed to require that the voter have his 'domicil' in the appropriate city or town."); *Kempster v. City of Milwaukee*, 97 Wis. 343, 72 N.W. 743, 744 (Wisc. 1897) ("The word 'residence' as used in the charter does not mean physical location continuously. It is used in the broad sense of domicile requisite to citizenship."); *Berry v. Wilcox*, 44 Neb. 82, 62 N.W. 249, 250 (Neb. 1895) ("The generally accepted definition of 'residence,' when the term is used with reference to the qualification of voters, is synonymous with 'domicile.' "); *accord, Holzberger v. Schoentag*, 54 Misc. 2d 547, 283 N.Y.S.2d 92, 94-95 (N.Y. Sup. Ct. 1967) ("There is no question but that . . . 'domicile' and 'residence' are also synonymous."); *Hubbard v. McKey*, 193 So.2d 129, 132 (Miss. 1966) ("Residence and domicile under our election laws are synonymous."); *Williams v. Commonwealth*, 116 Va. 272, 81 S.E. 61, 63 (Va. 1914) ("For the purposes of voting and holding office a man cannot have more than one legal residence."). Moreover, the parallel provision in the Guam Organic Act pertaining to the qualifications of legislators — which had been adopted four years prior to section 6(c) of the Revised Organic Act — provides that "[n]o person shall sit in the legislature . . . who has not been domiciled in Guam for at least five years," 48 U.S.C. § 1423f, thus providing further support that Congress intended for the terms "bona fide resident" and "domicile" to be synonymous with each other. Importantly, as the parties emphasize in their briefs, such a construction would prevent the absurd result of individuals being able to become bona fide residents of multiple jurisdictions, and thus being able to vote or run for office in the Virgin Islands and another state or territory simultaneously. *See Sonson v. People*, 59 V.I. 590, 598 (V.I. 2012) (statutes should be construed sensibly to avoid interpretations which would yield absurd results).

■ ■ Given these overwhelming authorities, we conclude that the Superior Court erred when it applied the *Vento* taxpayer residency test, and that the appropriate test to determine whether one is a bona fide resident for purposes of section 6(b) of the Revised Organic Act is the same as the test to determine whether one is domiciled in the Virgin Islands. Nevertheless, the fact that the Superior Court applied the incorrect legal standard does not necessitate a remand. *See* V.I.S.CT.R. 4(i) ("No error or defect in any ruling or order or in anything done or omitted by the Superior Court . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as to not affect the substantial rights of the parties."). " 'Domicile' is . . . a concept widely used in both federal and state courts . . . and its meaning is generally uncontroverted," in that "domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989) (collecting cases). In its December 29, 2016 opinion, the Superior Court made factual findings with respect to both Rodriquez's physical presence and intent. Moreover, although the Superior Court made factual findings with respect to Rodriquez's social, family, and professional relationships, as well as his self-representations, these factors are often relevant to determining intent. *See, e.g., Stevenson v. Steele*, 720 A.2d 1176, 1180 n.3 (Md. 1998). In other words, although ostensibly applying the incorrect taxpayer residency standard, the Superior Court nevertheless considered, and weighed, all of the same factors that it would have to consider to determine Rodriquez's domicile. Consequently, any error in this regard is harmless.

3. *Likelihood of Success on the Merits*

In its December 29, 2016 opinion, the Superior Court concluded that although Rodriquez owned property in both Tennessee and the Virgin Islands, he was physically present in the Virgin Islands for the majority of the three-year period preceding the 2016 general election. Nevertheless, the Superior Court determined that the evidence established that Rodriquez lacked the intent to remain in the Virgin Islands for the entire three-year period, since he (1) occupied portions of family-owned property in the Virgin Islands on a temporary basis while paying a mortgage on a home in Tennessee that remained occupied by his wife and children; (2) used his Tennessee address on an IRS Form 1099 issued to

him by his employer for the 2013, 2014, and 2015 tax years; (3) had not observed the formalities of Virgin Islands residency, in that he did not re-register to vote in the Virgin Islands until May 8, 2014, and did not surrender his Tennessee driver's license in favor of a Virgin Islands driver's license until July 2016; (4) listed his Tennessee address on his bankruptcy filing and swore, under penalty of perjury, that he did not live anywhere other than Tennessee during the preceding three years and did not live in any other district for a longer period over the last 180 days; (5) filed suit against a mortgagee in Tennessee, in which he represented himself as a resident of Tennessee in the complaint; and (6) did not file his 2013 and 2014 tax returns with the Virgin Islands Bureau of Internal Revenue until January 2016.

In his appellate brief, Rodriquez requests that this Court disregard many of these findings, and in effect weigh the evidence differently than the Superior Court. But because these constitute factual findings by the Superior Court, this Court's review is limited, in that it "must accept the factual determination of the fact finder unless the determination 'either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.' " *Daniel*, 49 V.I. at 329 (quoting *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91-92 (3d Cir. 1992)). For example, although Rodriquez notes that "at the preliminary injunction hearing [he] testified that St. Thomas was his home," (Appellant's Br. 8), the Superior Court was permitted to consider this testimony alongside the other evidence introduced at the hearing — including his sworn declaration that he was a resident of Tennessee — and weigh the evidence to resolve any conflicts.[7] It is not the role of this Court to re-analyze, re-evaluate, or re-weigh this evidence on appeal. *Moore v. Walters*, 61 V.I. 502, 508 (V.I. 2014) (collecting cases).

Similarly, Rodriquez maintains that the Superior Court placed excessive weight on the sworn representations in his bankruptcy filings

---

[7] Similarly, while Rodriquez maintains that the Superior Court should have weighed the fact that he filed his 2013 and 2014 tax returns with the Virgin Islands Bureau of Internal Revenue as a factor in support of his Virgin Islands residency, the Superior Court — as the finder of fact — was within its right to determine that the fact Rodriquez did not file his 2013 and 2014 tax returns until January 2016 was proof that he did not believe he was a Virgin Islands resident at the time the income was earned, particularly given the 1099 Forms listed Rodriquez's Tennessee residence as his home address.

that Tennessee was his only home. As noted above, the Superior Court, when sitting as the trier of fact, possesses the discretion to weigh the evidence as it sees fit, with its findings to be set aside by this Court only in very limited circumstances. Importantly, courts have consistently held that statements filed with the government under penalty of perjury are among the strongest evidence of domicile. *See, e.g., Youngman v. Robert Bosch, LLC*, 923 F.Supp.2d 411, 422 (E.D. N.Y. 2013) (filing of bankruptcy petition stating, under penalty of perjury, that New Jersey was plaintiff's home for the past three years, is proof that plaintiff intended New Jersey to be his permanent home); *Stubbs v. Stubbs*, 211 So.2d 821, 825 (Miss. 1968) ("[T]he declarations of the party himself, where he can have no object or inducement to falsify the truth or to deceive those to whom such declarations are made, are the best evidence of his intention to make his actual residence his permanent residence also."); *Hogan v. Davis*, 243 Ark. 763, 422 S.W.2d 412, 414-15 (Ark. 1967) (act of swearing, under oath, that one resides in Wyoming "completely negates any vague and indefinite expression of a desire to return to Arkansas, insofar as determination of place of domicile is concerned"). Notably, the Superior Court emphasized that Rodriquez did not merely list his Tennessee address on the bankruptcy petition and aver that he had not lived anywhere else, but, when asked on the bankruptcy petition to answer the question "why are you choosing this district to file for bankruptcy?," chose to check the box "Over the last 180 days before filing this petition, I have lived in this district longer than in any other district," even though he had the option of checking a second box that merely stated "I have another reason." Consequently, the Superior Court committed no error when it gave greater weight to Rodriquez's sworn representations in his bankruptcy filings and ultimately concluded that he did not have the intent to make the Virgin Islands his permanent home despite his physical presence in the Territory.[8]

---

[8] In their brief, Sarauw and Berry, relying on *In re Contest of Primary Election Candidacy of Fletcher*, 337 S.W.3d 137 (Mo. Ct. App. 2011), maintain that the doctrine of judicial estoppel should preclude Rodriquez from contradicting the prior sworn statements in his bankruptcy case in this proceeding, since litigants should not be permitted to "tak[e] a position, under oath, in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits . . . at that time." In his reply brief, Rodriquez argues that judicial estoppel is not applicable to his bankruptcy filing because his responses are not necessarily inconsistent with Virgin Islands residency. However, because the Superior Court did not apply the doctrine of

Accordingly, we affirm the December 29, 2016 opinion and order granting Sarauw and Berry's motion for a preliminary injunction.[9]

## III. CONCLUSION

Although the Superior Court erred when it applied a test for ascertaining taxpayer residency to determine whether Rodriquez is a bona fide resident of the Virgin Islands for election purposes, the error is harmless given that the same factors are relevant to determining domicile, which is synonymous with bona fide residence. The Superior Court further correctly held that laches did not bar Sarauw and Berry's claim, and did not commit clear error when it weighed the evidence to determine that Sarauw and Berry were likely to succeed in their claim that Rodriquez was not a bona fide resident of the Virgin Islands for the three years preceding the 2016 general election. Accordingly, we affirm the December 29, 2016 opinion and order.

---

judicial estoppel to Rodriquez's representation in his bankruptcy filing, but instead weighed the evidence, we express no opinion as to whether the judicial estoppel doctrine presents an alternate ground to affirm the Superior Court's decision.

[9] In their brief, Sarauw and Berry contend that this Court should rule, for the first time on appeal, that Sarauw, as the recipient of the eighth-highest number of votes, should be deemed the seventh-highest vote-getter in the event Rodriquez is disqualified, and therefore be certified as a member of the 32nd Legislature. Because this issue was not addressed by the Superior Court as part of the motion for a preliminary injunction, we decline to consider it for the first time on appeal. *See* V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal."). Nevertheless, we note the well-established principle "that votes cast for an unqualified candidate are not in and of themselves void," and that "the effect of the disqualification of a candidate subsequent to the election is that . . . the truth and legitimate will of the people has not yet been expressed." *Stephenson v. Woodward*, 182 S.W.3d 162, 173 (Ky. 2005); *see also Davies v. Wilson*, 229 Iowa 100, 294 N.W. 288 (Iowa 1940); *People ex rel. Furman v. Clute*, 50 N.Y. 451 (N.Y. 1872); *State ex rel. Dunning v. Giles*, 2 Pin. 166 (Wisc. 1849).