**MAPLE ISLAND FARM, Inc. v. BITTERLING.**

**No. 14455.**

United States Court of Appeals, Eighth Circuit.

April 24, 1952.

As Corrected May 8, 1952.

Rehearing Denied May 13, 1952.

Pierce Butler, St. Paul, Minn. (M. J. Doherty and Doherty, Rumble, Butler & Mitchell, St. Paul, Minn., on the brief), for appellant.

Warren E. Burger, St. Paul, Minn. (Roland J. Faricy and Faricy, Burger, Moore & Costello, St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the defendant from a judgment for the plaintiff in an action for damages for breach of two contracts. Jurisdiction is predicated upon diversity of citizenship. 28 U.S.C.A. § 1332. At this time the question of the jurisdiction of the district court only is presented for determination.

In his amended complaint the plaintiff alleged "That the plaintiff is a citizen of the State of Oklahoma and that the defendant is a corporation organized and existing under the laws of Minnesota having its principal offices at Stillwater, Minnesota. That the amount in controversy, exclusive of interest, exceeds the sum or value of Three Thousand Dollars ($3,000.00) and is between citizens of different states."

In its answer defendant alleged that "* * * it is without knowledge or information sufficient to form a belief as to the citizenship of plaintiff or diversity

of citizenship as between plaintiff and defendant."

The case was tried to the court without a jury, and at the conclusion of the trial the court made findings of fact, filed an opinion and entered judgment for the plaintiff. The court found: "Plaintiff is a citizen of the State of Oklahoma and of the United States of America", and that the court has jurisdiction of the parties and of the causes of action. In its opinion the court said: "The plaintiff is a citizen of Oklahoma, but has devoted about fifteen years to business in Mexico, Venezuela and other South and Central American countries * * *."

The defendant then moved that the finding of the court be amended to read: "Plaintiff is a citizen of the United States of America but not of any State thereof * * *"; and to substitute in lieu of the court's conclusion of law the following: "The court is without jurisdiction of the subject matter of this action." The defendant moved further that if its motions to amend be granted the judgment be vacated and the action dismissed. These motions were overruled and the defendant appealed.

It is conceded that the defendant is a Minnesota corporation. The defendant concedes also that the plaintiff is a citizen of the United States. The sole question on jurisdiction is whether the court erred in holding that the plaintiff is or was at the commencement of this action a citizen of Oklahoma. It is contended:

First, that the evidence is insufficient to show that plaintiff ever was a citizen of Oklahoma, and

Second, that the evidence clearly demonstrates that if plaintiff ever was a citizen of Oklahoma, he lost that citizenship by establishment of a domicile in Caracas, Venezuela, many years before the commencement of this action.

The plaintiff, Walter Bitterling, was born in Montana. He was 45 years of age at the time of the trial of this case. He had lived in North and South Dakota, Illinois, Alabama and Oklahoma. He attended grade school and high school in Oklahoma.

After leaving high school he studied Spanish in the Central High School at Tulsa, Oklahoma. He was also trained in stenography. In 1934 he was a stenographer and secretary for a business firm in Tulsa.

In 1934 he was employed by the Carter Oil Company of Tulsa, a subsidiary of the Standard Oil Company of New Jersey, to be a stenographer in Venezuela for the Standard Oil Company of Venezuela for which company he worked for three and one-half years, or until some time in 1938. During that time he was required in his work to travel over three-fourths of Venezuela.

His next employment was with Williams Brothers Corporation of Tulsa, Oklahoma. His work for this company was partially in the United States and partially in Venezuela assisting the management to secure personnel. This employment was terminated in 1939.

During the next two years, 1940 and 1941, he was employed by the International Harvester Company. His work with this company was as sales representative for the export department, and he traveled in Venezuela, French Guiana, British Guiana, Dutch Guiana, Curacao, Trinidad, the adjacent British West Indies, including Jamaica, all of Venezuela, and portions of Brazil.

Late in 1941 he returned to work with Williams Brothers Construction Corporation of Tulsa, Oklahoma. His employer sent him to Venezuela to take part in the installation of a pipeline, which work was finished "in about mid-1942", after which he returned to the United States to do personnel work for Williams Brothers. He was assigned to the job of recruiting personnel in the United States for the erection of overground and underground gasoline storage throughout a great part of Africa. He was in Africa on this job for about seven months, returning to the United States in the first quarter of 1943.

He then attempted to join the armed forces of the United States but was not accepted. However, he then became employed by the United States Government and continued in that capacity for about two years, ending in mid-1944.

After the conclusion of the European war Bitterling associated himself with the Corporacion Americana as director of its automobile and truck department.

In 1944 Bitterling in association with a Mr. Ramon Casulleras formed a company called Compania Commercial Ultramar to represent American and European manufacturers in Venezuela. Bitterling was president of the company and Casulleras was manager.

In 1945 Bitterling was still engaged in business with the truck division of Corporacion Americana, and at the same time he maintained his connection with Ultramar. During this period he traveled extensively in Venezuela and in the United States. At that time he made his "home" while in Venezuela in an apartment in Caracas with a brother and two sisters who were employed there.

In September, 1945, Bitterling returned to the United States where he remained until March, 1946. During this period he discussed with the officers of the defendant in Stillwater, Minnesota, the possibility of his representing that company in the distribution of its powdered milk product in Venezuela and Mexico. As a result of these discussions a Venezuelan corporation was organized at Caracas in April, 1946, named Compania Distribuidora Velle Verde with which an arrangement was made whereby the company acted as distributor, on a purchase and resale basis, for defendant's Maple Island powdered milk in Venezuela from August, 1946, until June, 1948. During this period Bitterling maintained his headquarters at Caracas from which place he made various trips to the United States and elsewhere.

About November 20, 1947, Bitterling went to New York to assist in the operation of a corporation named International Trade Service. During this period he lived a part of the time in a hotel and for a time shared an apartment with another person. He remained in New York until late in February, 1948. In April, 1948, he returned to Venezuela where he remained in the employ of the defendant until October, 1948, in the promotion of the sale of its powdered milk. Between June and October he maintained his office in a room in his "home."

Counsel for Bitterling have summarized from the record his travels from January 1, 1948, to October 30, 1948, as follows:

1. He was in New York City as vice-president of International Trade Service from November 29, 1947, until February 25, 1948.

2. He was on a trade tour in Mexico, Cuba, Puerto Rico, and other Caribbean islands between February 25 and March 29, 1948.

3. In U.S.A. from March 29, 1948, until April 11, 948.

4. In Havana, Cuba, April 11, 12, and 13, 1948.

5. In Caracas, Venezuela, from April 14, 1948, to April 29, 1948, and flew to New York on April 29, 1948.

6. From April 30 to May 30, 1948, he was in New York, Tulsa, Oklahoma, Chicago, and Stillwater, Minnesota.

7. From June 1 to September 5, 1948, he was in Venezuela, part of the time at Caracas and part of the time visiting Oil Camps. He left Venezuela September 5, 1948, and went to New Orleans, New York, Stillwater, and other places, returning to Venezuela October 20, 1948. His contract with defendant was terminated October 30, 1948.

Bitterling was married in New York on June 14, 1946, and took his wife with him to Venezuela. She returned not long afterwards to New York, and thereafter he procured a divorce from her in Venezuela.

In response to a pretrial interrogatory Bitterling replied that: "Plaintiff is a citizen of the United States of America; * * place of residence is Caracas, Venezuela; * * * last state of permanent residence in the United States, Oklahoma * * *"

Bitterling filed Venezuela income tax returns for the years 1946 and 1947.

The defendant's first contention, namely, that the evidence fails to show that Bitterling ever was a citizen of Oklahoma, is without merit.

Section 1 of the Fourteenth Amendment to the Constitution provides that

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."

The evidence shows without contradiction that Bitterling was born in the State of Montana within the United States, and that he resided in the State of Oklahoma from the time he entered grade school until 1934 or 1935 when he was 29 or 30 years of age. At least the evidence is sufficient to support a finding of the court that he was a citizen of Oklahoma.

The crucial question is whether or not sometime after 1934 or 1935, when he began his travels in South America, Africa and the United States he ceased to be a citizen of Oklahoma. It is because this question is at least debatable that we have set out at considerable length a summary of the evidence of his life and his business experience during this period.

■■ Loss of citizenship in a state results for the purpose of diversity when a citizen of the state changes his abode or domicile with no intention of returning to his former abode or home. Williamson v. Osenton, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758; Gilbert v. David, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360; In the case of Spurgeon v. Mission State Bank, 8 Cir., 151 F.2d 702, 705–706, certiorari denied, 327 U.S. 782, 66 S.Ct. 682, 90 L.Ed. 1009, this court said:

"To acquire a domicil of choice, the law requires the physical presence of a person at the place of the domicil claimed, coupled with the intention of making it his present home. When these two facts concur, the change in domicil is instantaneous."

■ These rules are not without qualification, however. In United States v. Knight, 9 Cir., 299 F. 571, 573, the court say: "An American citizen does not become a permanent resident of a foreign country by simply taking employment there with an American firm, however long his employment may continue."

The question of domicile for tax purposes has often arisen. The case of District of Columbia v. Murphy, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329, is such a case. It was there said, 314 U.S. at page 455, 62 S.Ct. at page 309: "The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary." Citing authorities. In a footnote the Court explains thus: "This is not inconsistent with our holding that domicile here does not follow from mere indefiniteness of the period of one's stay. While the intention to return must be fixed, the date need not be; while the intention to return must be unconditional, the time may be, and in most cases of necessity is, contingent. The intention must not waver before the uncertainties of time, but one may not be visited with unwelcome domicile for lacking the gift of prophecy."

In State of Texas v. State of Florida, 306 U.S. 398, at page 424, 59 S.Ct. 563, at page 576, 83 L.Ed. 817, the Court say: "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." And on page 425, of 306 U.S., on page 576 of 59 S.Ct., the Court say: "In such circumstances the actual fact as to the place of residence and decedent's real attitude and intention with respect to it as disclosed by his entire course of conduct are the controlling factors in ascertaining his domicile."

In 17 Am.Jur., Domicil, § 35, it is said: "To acquire a foreign domicil, it is of course essential that there be a concurrence of residence on foreign soil and an intention to remain there * * * The question as to whether a person has sufficiently made known his intention of settling himself permanently in a foreign country must depend on all the circumstances of the case. The chief point to be considered is the animus manendi." ·

And in 28 C.J.S., Domicile, § 16, "a. General Rules. There are rebuttable presumptions that the place where a person actually lives is his domicile and that a domicile, once established, continues until a change is shown, so that the burden of proving a change of domicile rests on the party alleging it. The presumption is in favor of an original or former domicile

as against an acquired one, and of a domestic as against a foreign one." And again, § 18 a. "Proof of a change of domicile must be clear and convincing * * *. More evidence is required to show a loss of domicile of origin than of any other kind, and more is required to establish a change of domicile from one nation to another than from one state to another; but less evidence is required to prove a continuity of domicile than to establish a new domicile."

The question of domicile is a mixed question of law and of fact, but mainly one of fact. Philadelphia & Reading R. Co. v. Sherman, 2 Cir., 230 F. 814. The determination of the fact is for the jury of course if tried to a jury or by the court if tried by the court, and such determination is conclusive unless clearly erroneous. And it is not clearly erroneous in a case where the evidence would support a conclusion either way. United States v. Yellow Cab Co., 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150; United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746. And see Nee v. Linwood Securities Co., 8 Cir., 174 F.2d 434; Cleo Syrup Co. v. Coca Cola Co., 8 Cir., 139 F.2d 416, 150 A.L.R. 1056, certiorari denied, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074.

In his complaint the plaintiff alleged that he is a citizen of Oklahoma. During the years subsequent to 1935 he lived in Venezuela or New York or Africa wherever his business required his presence. He was not asked and he did not say as a witness that he intended to remain in Venezuela either indefinitely or permanently. His intention must be deduced therefore from all the circumstances in evidence. Were we the triers of the fact in the first instance we might have concluded that he had lost his citizenship in Oklahoma. We might have found that he was domiciled in New York where he lived from November, 1947, to February 25, 1948, as vice-president of International Trade Service. We cannot upon this record, however, hold that the court's finding is clearly erroneous. Accordingly the finding of the court that the plaintiff was and is a citizen of Oklahoma is

Affirmed.