**JANELLE K. SARAUW and BRIGITTE BERRY, Appellants/Plaintiffs**

**v.**

**CAROLINE FAWKES, in her official capacity as SUPERVISOR OF ELECTIONS, VIRGIN ISLANDS JOINT BOARD OF ELECTIONS, BOARD OF ELECTIONS, ST. THOMAS-ST. JOHN, and KEVIN A. RODRIGUEZ a/k/a KEVIN A. RODRIQUEZ, Appellees/Defendants**

S. Ct. Civil No. 2017-0005

Supreme Court of the Virgin Islands

January 8, 2017

TERRI GRIFFITHS, ESQ., St. Thomas, USVI, *Attorney for Appellants.*

CHRISTOPHER A. KROBLIN, ESQ., MARJORIE B. WHALEN, ESQ., Kellerhals Ferguson Kroblin PLLC, St. Thomas, USVI, *Attorneys for Appellee Kevin A. Rodriquez.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

### (January 8, 2017)

PER CURIAM. Appellants Janelle K. Sarauw and Brigitte Berry appeal from the Superior Court's January 5, 2017 opinion and order, which dissolved a preliminary injunction enjoining Appellee Kevin A. Rodriquez from taking the oath of office as a member of the 32nd Legislature, denied their motion for a permanent injunction, and dismissed their claims with prejudice. Because the Superior Court failed to correctly apply the doctrine of judicial estoppel, we vacate the January 5, 2017 opinion and order, reinstate the preliminary injunction enjoining Rodriquez from taking the oath of office, and remand this matter to the Superior Court for further proceedings.

## I. BACKGROUND

This appeal represents the second time this Court has been asked to review a decision of the Superior Court pertaining to Rodriquez's eligibility to serve in the 32nd Legislature. *See Fawkes v. Sarauw*, 66 V.I. 237 (V.I. 2017). On November 8, 2016, the Virgin Islands held its general election to elect members of the 32nd Legislature. Rodriquez and Sarauw were among eighteen candidates seeking seven seats to represent the District of St. Thomas/St. John in the 32nd Legislature. The unofficial results placed Rodriquez in sixth place — thus earning him a seat in the 32nd Legislature — and Sarauw in eighth place.

On November 21, 2016, the day before the St. Thomas-St. John Board of Elections was scheduled to certify the election results, Sarauw received an anonymous e-mail containing a portion of a bankruptcy petition Rodriquez filed, under penalty of perjury, with the United States Bankruptcy Court for the Middle District of Tennessee on January 25, 2016. In his bankruptcy petition, Rodriquez, in response to a question asking "Where you live," provided a Tennessee address. When asked

"Why are you choosing this district to file for bankruptcy," checked a box stating "Over the last 180 days before filing this petition, I have lived in this district longer than in any other district." Moreover, Rodriquez answered "No" when asked "During the last 3 years, have you lived anywhere other than where you live now?"

Later that same day, Berry — an unpaid volunteer for Sarauw's campaign — filed a letter with the Supervisor of Elections, Caroline Fawkes, together with the bankruptcy petition, alleging that Rodriquez is not qualified to serve in the 32nd Legislature, for section 6 of the Revised Organic Act of 1954 provides that "[n]o person shall be eligible to be a member of the legislature . . . who has not been a bona fide resident of the Virgin Islands for at least three years next preceding the date of his election." 48 U.S.C. § 1572.

Notwithstanding Berry's letter, the Board of Elections certified the election results on November 22, 2016. Shortly thereafter, Berry wrote another letter challenging Rodriquez's candidacy, which she directed to all members of the Board of Elections. In a letter dated November 22, 2016, but not received until several days later, Fawkes advised Berry that the time period to contest Rodriquez's candidacy with the Board of Elections had passed. *See* 18 V.I.C. § 412.

Sarauw and Berry filed a complaint in the Superior Court on December 9, 2016, along with an emergency motion for a preliminary injunction. In their complaint, they alleged that Rodriquez is not legally qualified to serve in the Legislature, in that he was a resident of Tennessee for at least a portion of the three-years preceding the November 8, 2016 general election, and requested that the Superior Court declare him ineligible to serve in the 32nd Legislature and enjoin him from such service, and compel Fawkes and the Board to de-certify him as a qualified candidate.

The Superior Court held a hearing on the preliminary injunction motion on December 16, 2016, and permitted the parties to file written closing arguments and replies, respectively, on December 21, 2016, and December 22, 2016. At the preliminary injunction hearing, Sarauw and Berry also introduced into evidence an adversary complaint filed by Rodriquez as part of the bankruptcy proceeding on May 4, 2016, in which it was stated that "Plaintiff, Kevin Rodriquez is a citizen and resident of Davidson County TN" and that "Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here."

On December 29, 2016, the Superior Court issued an opinion and order granting the motion for a preliminary injunction, enjoining Rodriquez from taking the oath of office for the 32nd Legislature, scheduled for January 9, 2017, and scheduling a trial on the merits for January 23, 2017. Although Sarauw and Berry had argued that Rodriquez should be judicially estopped from contradicting the statements in his bankruptcy petition and adversary complaint, the Superior Court did not issue a ruling on the judicial estoppel issue, but instead weighed the preliminary injunction factors based on the evidence introduced at the preliminary injunction hearing.

Rodriquez timely filed his notice of appeal of the preliminary injunction ruling on December 30, 2016, and this Court, in an order entered on the same day, ordered an expedited briefing schedule. In an order signed on January 1, 2017, but entered on January 3, 2017, the Superior Court, upon Sarauw and Berry's motion, re-scheduled the trial on the merits to January 4, 2017, so that the matter may be resolved before the swearing-in of the 32nd Legislature on January 9, 2017. After the parties timely filed their respective briefs, this Court, in a January 4, 2017 opinion, affirmed the Superior Court's December 29, 2016 opinion and order granting Sarauw and Berry's motion for a preliminary injunction. *Fawkes*, 66 V.I. at 251. Because the Superior Court did not issue a ruling on the judicial estoppel issue, this Court "express[ed] no opinion as to whether the judicial estoppel doctrine presents an alternate ground to affirm the Superior Court's decision." *Id.* 66 V.I. at 251 n.8.

The Superior Court held its merits hearing on January 4, 2017. At the hearing, the Superior Court admitted all the admissible evidence that had previously been introduced at the December 16, 2016 preliminary injunction hearing, and permitted the parties to present additional evidence. At the merits hearing, numerous witnesses testified to Rodriquez's physical presence in, and social and professional connections to, the Virgin Islands. Moreover, Rodriquez's wife testified that Rodriquez had not lived in the Tennessee home since October 2012, that he had surrendered his keys to the home, and that he does not stay in the home when he travels to Tennessee to visit his children. Additionally, Rodriquez supplemented his testimony from the preliminary injunction hearing by, among other things, explaining that he had filed a petition for child custody in the Virgin Islands, that he had enrolled his children in

school in the Virgin Islands, and that he participated in community activities in the Virgin Islands, including participating as a member of a cancer Relay For Life team and being involved with the Virgin Islands Democratic Party.

On January 5, 2017, the Superior Court issued an opinion and order denying Sarauw and Berry's motion for a permanent injunction, dismissing all their claims with prejudice, and consequently dissolving the earlier preliminary injunction. First, the Superior Court rejected Sarauw and Berry's judicial estoppel claim because it concluded that Rodriquez had not asserted inconsistent positions. The Superior Court then determined that the representations Rodriquez made in his bankruptcy petition were "discredited by witness testimony" from the January 4, 2017 hearing; specifically, the testimony from Rodriquez's wife that "he moved out of the [Tennessee] home in October 2012, that he does not stay at home when he travels to Tennessee to visit the children, and that he surrendered the keys to the home in October 2012."

Sarauw and Berry timely filed their notice of appeal with this Court on January 6, 2017. This Court, in a January 7, 2017 order, issued an expedited briefing schedule requiring both parties to file their principal briefs by 12:00 p.m. on January 8, 2017, and their reply briefs by 5:00 p.m. on the same day. Although Sarauw and Berry timely filed their principal brief, Rodriquez failed to do so, instead electing to file a motion to dismiss on non-merits grounds based on purported technical defects in the January 6, 2017 notice of appeal. Shortly thereafter, at 1:18 p.m., this Court issued an order denying the motion to dismiss,[1] and, notwithstanding his failure to timely file a principal brief, *sua sponte* extended the time for Rodriquez to file a principal brief until 5:00 p.m. Rodriquez timely filed a brief with this Court by the extended deadline, and thus this expedited matter is now ripe for disposition.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Pursuant to the Revised Organic Act of 1954 and the Virgin Islands Code, this Court exercises appellate jurisdiction over all appeals from the

---

[1] *See* V.I.S.CT.R. 4(c) ("An appeal shall not be dismissed solely for defects of form or title of the notice of appeal.").

final decisions of the Superior Court of the Virgin Islands. 48 U.S.C. § 1613a(d); 4 V.I.C. § 32(a). Because the Superior Court's January 5, 2017 opinion and order not only denied Sarauw and Berry's motion for a permanent injunction, but dismissed all their claims with prejudice, it qualifies as a final judgment. *See, e.g., Etienne v. Etienne*, 56 V.I. 686, 690-91 (V.I. 2012).

This Court exercises plenary review of the Superior Court's application of law, while its factual findings are reviewed only for clear error. *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 436 (V.I. 2013) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)).

## B. Judicial Estoppel

■ On appeal, Sarauw and Berry renew their argument that the judicial estoppel doctrine precludes Rodriquez from taking a position contrary to the one asserted in the bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Tennessee. This Court previously acknowledged that judicial estoppel is a common-law doctrine that prevents a party from adopting inconsistent positions when doing so would constitute a fraud on the court. *Walters v. Walters*, 60 V.I. 768, 775 n.7 (V.I. 2014); *Fontaine v. People*, 56 V.I. 571, 583 n.7 (V.I. 2012) (quoting *Boston v. Gov't of the V.I.*, 46 V.I. 520, 526 (D.V.I. App. Div. 2005)). However, while we have already recognized that the doctrine exists, this Court has never established the precise elements necessary for its application. Therefore, before applying the judicial estoppel doctrine to this case, we begin by conducting the three-part analysis provided for in *Banks v. Int'l Rental & Leasing Co.*, 55 VI. 967 (V.I. 2011).

### 1. The Test for Judicial Estoppel in the Virgin Islands

■ As we have previously explained,

> The first step in the analysis — whether any Virgin Islands courts have previously adopted a particular rule — requires [a court] to ascertain whether any other local courts have considered the issue and rendered any reasoned decisions upon which litigants may have grown to rely. The second step — determining the position taken by a majority of courts from other jurisdictions — directs the [court] to consider all potential sides of an issue by viewing the potentially different ways that other states and territories have resolved a particular ques-

tion. Finally, the third step in the *Banks* analysis — identifying the best rule for the Virgin Islands — mandates that the [court] weigh all persuasive authority both within and outside the Virgin Islands, and determine the appropriate common law rule based on the unique characteristics and needs of the Virgin Islands.

*Gov't of the V.I. v. Connor*, 60 V.I. 597, 603-04 (V.I. 2014) (internal citations omitted). In its January 5, 2017 opinion, the Superior Court relied on the *Banks* analysis conducted in 117/1997 *V.I. Taxi Association v. V.I. Port Auth.*, Super. Ct. Civ. No. (STT), 2016 V.I. LEXIS 69, at *48-49 (V.I. Super. Ct. June 8, 2016), which ultimately concluded that judicial estoppel requires "a determination involving whether a party is in fact asserting inconsistent positions" and that "rather than adopt a strict multi-factor test," the consideration of any other factors should be "applied on a case by case basis." We agree with much of the thoughtful analysis of the *V.I. Taxi Association* court, although — as we shall later explain — we believe the factors that guide a court's consideration should generally be limited to those relevant to protecting the integrity of the judicial process.

 The doctrine of judicial estoppel has been recognized by Virgin Islands courts. *See, e.g.*, *Walters*, 60 V.I. at 775 n.7; *Fontaine*, 56 V.I. at 583 n.7; *Boston*, 46 V.I. at 526; *Ford v. V.I. Dep't of Educ.*, Super. Ct. Civ. No. 489/2015 (STT), 2016 V.I. LEXIS 83, at *32-33 n.87 (V.I. Super. Ct. June 27, 2016); *V.I. Taxi Association*, 2016 V.I. LEXIS 69, at *34; *Benjamin v. Coral World VI, Inc.*, Super. Ct. Civ. No. 065/2013 (STT), 2014 V.I. LEXIS 35, at *7-8 (V.I. Super. Ct. June 12, 2014) (unpublished); *Gov't of the V.I. v. Lansdale*, 172 F. Supp. 2d 636, 651 (D.V.I. 2001); *Saastopankkien Keskus-Osake Pankki (Skopbank) v. Allen-Williams Corp.*, 7 F. Supp. 2d 601, 606, 39 V.I. 220 (D.V.I. 1998). Most of these courts, however, "have generally not analyzed the factors to be considered when applying the doctrine," and therefore are of little utility to our present inquiry. *V.I. Taxi Assoc.*, 2016 V.I. LEXIS 69, at *41. Nevertheless, these decisions generally recognize that the doctrine of judicial estoppel "rests on the basic notion that, absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Benjamin*, 2014 V.I. LEXIS 35, at **7-8 (quoting *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010)).

With respect to the second factor, today, it appears that all federal and state courts in the United States now recognize the doctrine of judicial

estoppel. Kira A. Davis, *Judicial Estoppel and Inconsistent Positions of Law Applied to Fact and Pure Law*, 89 CORNELL L. REV. 191, 198 (2003).[2] Although a minority of courts had either declined to recognize judicial estoppel, *see, e.g., Konstantinidis v. Chen*, 626 F.2d 933, 938, 200 U.S. App. D.C. 69 (D.C. Cir. 1980); *United States v. 162 Megamania Gambling Devices*, 231 F.3d 713, 726 (10th Cir. 2000); or permitted it only extremely narrow circumstances, *see, e.g., Porter v. Jolly*, 564 So. 2d 434, 437 (Ala. 1990), even these jurisdictions embraced the doctrine after it was definitively adopted by the Supreme Court of the United States in *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). *See, e.g., Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 792, 391 U.S. App. D.C. 21 (D.C. Cir. 2010) (upholding application of judicial estoppel under *New Hampshire v. Maine*); *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068-69 (10th Cir. 2005) ("Although this circuit has repeatedly refused to apply this principle . . . the Supreme Court's intervening decision in *New Hampshire* has altered the legal landscape."); *Ex Parte First Alabama Bank*, 883 So. 2d 1236, 1246 (Ala. 2003) ("We today embrace the factors set forth in *New Hampshire v. Maine* and join the mainstream of jurisprudence in dealing with the doctrine of judicial estoppel.").

■ In its decision adopting the judicial estoppel doctrine, the Supreme Court of the United States explained that "courts have uniformly recognized that its purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50 (internal citations and quotation marks omitted). Importantly, the United States Supreme Court emphasized that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle." *Id.* at 750 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)). Nevertheless, the United States Supreme Court identified "several factors [that] typically inform the decision whether to apply the doctrine in a particular case," including (1) that "a party's later position must be

---

[2] At the time of publication, "the Tenth and District of Columbia Circuits expressly rejected judicial estoppel, and may continue to do so." *Davis*, 89 CORNELL L. REV. at 197. However, in the intervening years, both courts have overruled their prior contrary precedents and adopted the judicial estoppel doctrine.

'clearly inconsistent' with its earlier position," (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled," and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51 (internal citations and quotation marks omitted). However, the United States Supreme Court emphasized that "[i]n enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicably of judicial estoppel," for "[a]ldditional considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751.

Although the Supreme Court of the United States has determined that judicial estoppel is a doctrine not amenable to being reduced to a general formulation or principle, some courts have developed more specific tests for application of judicial estoppel. Despite the United States Supreme Court's admonishment that the three factors specified in *New Hampshire v. Maine* "are neither inflexible nor exhaustive," some courts nevertheless only "pay lip service to this idea" and "[i]n actuality . . . tend to apply the three factors rigidly." Nicole C. Frazer, *Reassessing the Doctrine of Judicial Estoppel: The Implications of the Judicial Integrity Rationale*, 101 VA. L. REV. 1501, 1507-08 & n.25 (2015) (collecting cases). Others have adopted the "success approach," in which those courts "tend to treat a showing of success as a necessary condition for applying judicial estoppel." *Id.* at 1508 & nn.29-30 (collecting cases). However, in what has been dubbed the "intent approach," other courts — including the United States Court of Appeals for the Third Circuit[3] — "do not find the success of the party in the prior proceedings to be determinative when adjudicating questions of judicial estoppel," but instead place great weight on whether the party intended "to play fast and loose with the court[ ]," regardless of whether the party succeeded in the first proceeding. *Id.* at 1508 & nn.35-37 (collecting cases).

██ Turning to the most important factor — which rule represents the best rule for the Virgin Islands — we agree with the *V.I. Taxi Association*

---

[3] *See, e.g., Krystal Cadillac-Oldsmobile GMC Truck v. Gen. Motors Corp.*, 337 F.3d 314, 319-20 (3d Cir. 2003) (quoting *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001)).

court that the success approach "relies too heavily on a party's success with their inconsistent position rather than considering the harm caused by the fraud to the Court," while the intent approach unnecessarily "requires a separate analysis of whether the party is changing their position in bad faith." 2016 V.I. LEXIS 69, at *48. We agree with this conclusion because, as the Supreme Court of Connecticut recently emphasized in an opinion adopting judicial estoppel for the first time,

> [J]udicial estoppel serves interests different from those served by equitable estoppel, which is designed to ensure fairness in the relationship between parties . . . . The courts invoke judicial estoppel as a means to preserve the sanctity of the oath or to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.

*Association Resources, Inc. v. Wall*, 298 Conn. 145, 2 A.3d 873, 890-91 (2010) (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 71 (2d Cir. 1997)). *See also* Rand G. Boyers, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw. U. L. Rev. 1244, 1249 (1986) ("The gravamen of judicial estoppel is not privity, reliance, or prejudice. Rather, it is the intentional assertion of an inconsistent position that perverts the judicial system."). This focus is consistent with the rationale of the very first case applying judicial estoppel, which adopted the judicial estoppel doctrine because of "the obligation under which every man is placed to speak and act according to the truth of the case," *Hamilton v. Zimmerman*, 37 Tenn. (5 Sneed) 39, 48 (1857), and is reinforced by the United States Supreme Court's recognition that the purpose of the doctrine is "to protect the integrity of the judicial process." *New Hampshire*, 532 U.S. at 749. Because "[t]he inconsistently itself damages 'public confidence in the purity . . . of judicial proceedings,' " any test that mandates that certain factors must always be present in every case, regardless of the circumstances, is inconsistent with the underlying purpose of the doctrine. Leslie Sturdivant Ennis & John Herbert Roth, *The Detrimental Reliance Factor in Judicial Estoppel Theory As Applied to Bankruptcy Cases in Alabama: Inadvertent Confusion or Purposeful Innovation?*, 11 J. Bankr. L. & Prac. 313, 331 & n.87 (2002) (quoting *Melton v. Anderson*, 32 Tenn. App. 335, 222 S.W.2d 666, 669 (1948)).

■ For these reasons, we agree with the holding of the *V.I. Taxi Association* court, and conclude that the judicial estoppel doctrine will preclude a party from asserting a position on a question of fact or a mixed

264

question of law and fact[4] that is inconsistent with a position taken by that party in a previous judicial proceeding if the totality of the circumstances compels such a result. In conducting this inquiry, a court must focus on the impact that allowing the inconsistent claims would have on the judicial process, which may include considering the extent of the inconsistency (including any reasonable explanations that would harmonize both positions), whether the party has received an unfair advantage or benefit from asserting the inconsistent claims, and whether another court has already relied on the claim made in the first proceeding.[5] However, like the United States Supreme Court, we emphasize that these factors are neither exclusive nor exhaustive, and that a court may consider any relevant factor in light of the particular situation before it.

■ In reaching this decision, we are cognizant of our longstanding instruction "that the preference is to decide cases on their merits" and "that any doubts should be resolved in favor of this preference." *Fuller v. Browne*, 59 V.I. 948, 956 (V.I. 2013) (quoting *Spencer v. Navarro*, S. Ct. Civ. No. 2007-0069, 2009 V.I. Supreme LEXIS 25, at *9 (V.I. Apr. 8,

---

[4] Although virtually all courts have held that judicial estoppel applies to inconsistent positions on factual issues and mixed questions of law and fact, courts are deeply split as to whether judicial estoppel can apply to inconsistent positions on purely legal questions. *See* Davis, 89 CORNELL L. REV. at 202-08. This Court has repeatedly held — albeit not in the context of judicial estoppel — that "parties may not, through explicit agreement or implicitly by omission, stipulate to the law," *Ottley v. Estate of Bell*, 61 V.I. 480, n.4 (quoting *Simmonds v. People*, 59 V.I. 480, 493 (V.I. 2013)), since a decision applying the law as stipulated to by the parties — as opposed to one applying stipulated facts — "may unfairly and unjustifiably affect the disposition of other cases." *V.I. Narcotics Strike Force v. Pub. Emps. Relations Bd.*, 60 V.I. 204, 211 (V.I. 2013) (quoting *Garcia v. Garcia*, 59 V.I. 758, 774 (V.I. 2013)). However, because it is well-established that "[t]he existence or nonexistence of a domicile in a given locality is a mixed question of law and fact when the facts are conflicting," Elizabeth Williams, 28 C.J.S. DOMICILE § 48 *Questions of Law and Fact* (2016) (collecting cases), we need not decide, as part of this appeal, whether a party may be judicially estopped from asserting inconsistent positions on pure questions of law.

[5] In its *Banks* analysis, the Superior Court in *V.I. Taxi Association* identified prejudice to the opposing party as one of multiple factors that could be considered in a judicial estoppel analysis. However, given that the doctrine of judicial estoppel is intended to safeguard the interests of the judicial system rather than the private interests of the parties, prejudice to the opposing party should typically be irrelevant to a judicial estoppel analysis unless the prejudice serves as the basis for the party deriving an unfair advantage or benefit from utilizing the inconsistent representations. *New Hampshire*, 532 U.S. at 750; Boyer, 80 Nw. U. L. REV. at 1249.

2009) (unpublished)). To that end, we emphasize that "[j]udicial estoppel is not a sword to be wield by adversaries," and "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996). In other words, judicial estoppel is not a "shortcut" to circumvent the ordinary fact-finding process. *Shea v. Clinton*, 880 F. Supp. 2d 113, 119 (D.D.C. 2012). Rather, "judicial estoppel is intended to protect the integrity of the fact-finding process by administrative agencies and courts." *Winnebago Industries, Inc. v. Haverly*, 727 N.W.2d 567, 573 (Iowa 2006). "Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996).

### 2. Rodriquez is Judicially Estopped from Disavowing his Tennessee Residency

Having determined the test for application of the judicial estoppel doctrine in the Virgin Islands, we now turn to the merits. In both the Superior Court proceedings and on appeal, Sarauw and Berry rely on *In re Contest of Primary Election Candidacy of Fletcher*, 337 S.W.3d 137 (Mo. Ct. App. 2011), a case which they describe as being virtually identical to the instant situation. In *Fletcher*, a candidate sought election to a position that, pursuant to the Missouri Constitution, required him to have been a resident of Missouri for one-year. However, during the pertinent one-year period, the candidate filed two federal lawsuits in which — to establish federal diversity jurisdiction — he represented that he was domiciled in California.[6] When a competing candidate initiated an action to challenge his eligibility to hold office, the trial court, after a bench trial, "found that the evidence from [the candidate's] witnesses at trial 'was consistent and

---

[6] Although the Missouri Constitution required that a candidate be a "resident," the *Fletcher* court determined that "[t]he words 'residence' and 'domicile' may be used interchangeably . . . because they are synonymous insofar as they apply to election residency requirements." 337 S.W.3d at 142 n.7. This Court, in its prior opinion in this matter, similarly concluded that the phrase "bona fide resident" in section 6 of the Revised Organic Act is synonymous with domicile. *Fawkes*, 66 V.I. at 248.

very persuasive' that [the candidate] 'has maintained his residence in Kansas City, Missouri, continuously,'" and that "it 'would have felt compelled to determine that [the candidate] is, in fact, a resident of Kansas City, Missouri' but for the doctrine of judicial estoppel." *Fletcher*, 337 S.W.3d at 140. Yet notwithstanding the evidence introduced at trial, the trial court "predicated its judgment of disqualification solely on the doctrine of judicial estoppel." *Id.* After considering the non-binding factors identified by the Supreme Court of the United States in *New Hampshire v. Maine*, the appellate court affirmed, concluding that judicial estoppel precluded the candidate from claiming that he was a resident of Missouri during the pertinent period because (1) the positions were "clearly inconsistent" and not explainable by inadvertence or mistake; (2) the candidate sought the benefit of California residency in order to invoke federal diversity jurisdiction in the federal proceedings but simultaneously sought the benefit of Missouri residency to seek elective office; (3) based on the proximity of the inconsistent statements — which were only one month apart — it could be inferred that the candidate was "playing fast and loose with the court;" and (4) application of the judicial estoppel doctrine was required to instill confidence in the judicial system because "[d]omicile and residency . . . are not subjects to be taken lightly because they determine where we undertake some of our most important civic duties including, *inter alia*, paying taxes and voting." *Id.* at 142-44.

Despite the *Fletcher* case's clear similarity to the instant matter, the Superior Court declined to apply the doctrine of judicial estoppel to preclude Rodriquez from contradicting his claims of Tennessee residency. The Superior Court premised its decision on the fact that in his bankruptcy petition, Rodriquez — under penalty of perjury — provided a Tennessee address when asked "Where you *live*," answered "No" when asked "During the last 3 years, have you *lived* anywhere other than where you *live* now," and answered "Over the last 180 days before filing this petition, I have *lived* in this district longer than in any other district" when asked "Why are you choosing this district to file for bankruptcy." (emphases added.) Although Rodriquez denied in his answer to Sarauw and Berry's complaint that he was a resident or domiciliary of Tennessee for the three-years preceding the election, and actively argued throughout the Superior Court proceedings that he was a Virgin Islands resident for this entire period, the Superior Court held that his representations were not "inconsistent" because "a determination of whether one is a 'resident'

or 'domiciliary' entails a legal analysis while whether one 'lives' in a particular place is a mere factual assertion void of any notion of permanency and not subject to the same level of judicial scrutiny as terms such as 'domiciliary' or 'resident.' "

■ We disagree. The Superior Court, in giving significance to the fact that determining residency may require legal analysis, effectively adopted a *per se* rule that the doctrine of judicial estoppel is inapplicable to mixed questions of law and fact. *See McCann v. Newman Irrevocable Trust,* 458 F.3d 281, 286 (3d Cir. 2006) ("A district court's determination regarding domicile or citizenship is a mixed question of fact and law . . ."); *Coury v. Prot,* 85 F.3d 244, 251 (5th Cir. 1996) (same); *Lundquist v. Precision Valley Aviation, Inc.,* 946 F.2d 8, 11 (1st Cir. 1991) (same); *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986) (same); *Maple Island Farm v. Bitterling,* 196 F.2d 55, 59 (8th Cir. 1952); *see also* Elizabeth Williams, 28 C.J.S. DOMICILE § 48 *Questions of Law and Fact* (2016) ("The existence or nonexistence of a domicile in a given locality is a mixed question of law and fact when the facts are conflicting . . . ."). However, virtually every court to consider the question has determined that the doctrine of judicial estoppel applies to mixed questions of law and fact. *See, e.g., Hardwick v. Cuomo,* 891 F.2d 1097, 1105 n.14 (3d Cir. 1989) ("[T]his court has recognized the doctrine of judicial estoppel to bind parties to factual and legal positions taken in litigation."); *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 214 (1st Cir. 1987) (noting that "the 'classic' case of judicial estoppel" is one where "a litigant asserts inconsistent statements of fact or adopts inconsistent positions on combined questions of fact and law"); *Allen,* 667 F.2d at 1167 (applying judicial estoppel to the mixed question of whether an employment relationship existed). In fact, numerous courts have applied judicial estoppel to hold parties to their prior inconsistent claims of domicile or residency. *See, e.g., Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC,* 692 F.3d 983, 996 (9th Cir. 2012); *Techno-TM, LLC v. Fireaway, Inc.,* 928 F. Supp. 2d 694, 698 (S.D.N.Y. 2013); *Arnold v. Melwani,* Cv. No. 09-00030, 2013 U.S. Dist. LEXIS 4860, at *50 (D. Guam Jan. 9, 2013) (unpublished); *Ceglia v. Zuckerberg,* 772 F. Supp. 2d 453, 456 n.1 (W.D.N.Y. 2011); *Cunningham v. World Sav. Bank, FSB,* No. 3:07-cv-08033, 2007 U.S. Dist. LEXIS 89302, at *8 (D. Ariz. Nov. 21, 2007) (unpublished); *Jones v. Law Firm of Hill and Ponton,* 141 F. Supp. 2d 1349 (M.D. Fla. 2001); *Fletcher,* 337 S.W.3d at 140;

*accord, Mason v. United States*, 956 A.2d 63, 66-67 (D.C. 2010) (applying judicial estoppel to question of whether the party is a United States citizen or an alien).

Likewise, the Superior Court committed error in concluding that Rodriquez's claims in the bankruptcy proceeding was not inconsistent with his claim to have been a Virgin Islands resident for the past three years. The Superior Court is correct that, in the bankruptcy petition filed on January 25, 2016, Rodriquez only used the terms "live" and "lived" with respect to his Tennessee address, and not the words "resident" or "domiciliary." We strongly question the significance of this terminology, given our recent holding that being a bona fide resident of the Virgin Islands requires *both* physical presence in the Virgin Islands *and* an intent to make the Virgin Islands one's home. *Fawkes*, 66 V.I. at 245-249. Since Rodriquez provided a Tennessee address when asked "Where you live," answered "No" when asked "During the last 3 years, have you lived anywhere other than where you live now," and answered "Over the last 180 days before filing this petition, I have lived in this district longer than in any other district" when asked "Why are you choosing this district to file for bankruptcy," it is not clear to this Court how these statements are in any way consistent with Rodriquez — for the past three years — both maintaining a physical presence in the Virgin Islands and intending to remain here.

Nevertheless, even if we were to draw a distinction between admitting to have "lived" in Tennessee as opposed to being a "resident" of Tennessee, we are still compelled to set aside the Superior Court's decision. Although the Superior Court focused exclusively on the statements in Rodriquez's January 25, 2016 bankruptcy petition, as Sarauw and Berry correctly note in their brief, those statements were not the only basis for their judicial estoppel claim. At the December 16, 2016 preliminary injunction hearing, Sarauw and Berry admitted into evidence, as Plaintiff's Exhibit No. 9, an adversary complaint filed by Rodriquez on May 4, 2016, which it stated that "Plaintiff, Kevin Rodriquez is a *citizen and resident* of Davidson County TN" and that "Venue is proper in this District because the acts and transactions occurred here, Plaintiff *resides* here, and Defendants transact business here." (emphases added).[7] At that hearing, Rodriquez admitted that he had viewed the complaint before, it

---

[7] We note that, unlike his bankruptcy petition, which Rodriquez personally signed under oath, the adversary complaint was signed only by Rodriquez's bankruptcy attorney. How-

269

had been filed by his attorney in the bankruptcy proceeding, and that the adversary proceeding was ultimately settled for $4,500.[8]

██ ██ Rodriquez's representation in the May 4, 2016 adversary complaint that he is a resident and citizen — which is synonymous with domiciliary[9] — of Tennessee is clearly and unquestionably inconsistent with his claim in the instant proceeding to have been a bona fide resident of the Virgin Islands for the past three years. This, however, does not automatically compel that we apply the doctrine of judicial estoppel to this case. As we explained above, to determine whether to invoke judicial estoppel, we must consider the impact that permitting Rodriquez's inconsistent claims would have on the judicial process.

Nevertheless, we conclude that the instant matter represents the textbook example of a case where judicial estoppel is warranted. The inconsistency is clear, and without legitimate excuse or explanation.[10]

---

ever, this Court has already held that the unsworn representations of a party's attorney are binding upon the client under the doctrine of judicial estoppel. *Walters*, 60 V.I. at 775 n.7.

[8] Importantly, in its January 3, 2017 order rescheduling the merits trial from January 23, 2017 to January 4, 2017, the Superior Court stated that "in the interest of time, the Court will not require that any party introduce into evidence any matter, either in the form of testimony or documents, already admitted during the hearing on the preliminary injunction." Moreover, in its January 5, 2017 opinion, the Superior Court acknowledged that it considered "a combination of the evidence presented at the evidentiary hearing on the preliminary injunction and the trial on the merits."

[9] It is well-established that, with respect to federal jurisdiction, the phrases "citizenship" and "domicile" are synonymous. *See, e.g., Frett-Smith v. Vanterpool*, 511 F.3d 396, 400-01 (3d Cir. 2008); *Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir. 1972); *Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir. 1968); *Janzen v. Goos*, 302 F.2d 421, 424 (8th Cir. 1962).

[10] In his appellate brief, as well as several of his filings throughout this matter, Rodriquez has maintained that the representations in his bankruptcy petition are not inconsistent with residency in the Virgin Islands because the federal bankruptcy venue statute provides that an individual may commence a bankruptcy action in any district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States of the person . . . ha[s] been located for the one hundred and eighty days immediately preceding such commencement." 28 U.S.C. § 1408. Because Rodriquez swore, under oath, in his bankruptcy petition that he was filing for bankruptcy in the Middle District of Tennessee because "[o]ver the last 180 days before filing this petition, I have lived in this district longer than in any other district," even though had the option of choosing "I have another reason. Explain (See 28 U.S.C. § 1408)," it is not clear how his petition can be interpreted as asserting a basis for venue other than the fact that he is domiciled or resides in Tennessee. In any case, this justification does not explain why, in the adversary complaint, Rodriquez stated that he "is a citizen and resident of Davidson County TN" and that "[v]enue is proper in this District because . . . Plaintiff resides here."

Moreover, the inconsistent statements were all made in a very short duration; for example, Rodriquez filed his adversary complaint in the bankruptcy proceeding stating that he was a resident and citizen of Tennessee less than two weeks before he executed his affidavit of candidacy stating that he was a bona fide resident of the Virgin Islands for the past three years. This warrants an inference that Rodriquez was "playing fast and loose with the court." *Fletcher*, 337 S.W.3d at 143. In addition, the United States Bankruptcy Court for the Middle District of Tennessee clearly relied on Rodriquez's representations of his residency and citizenship, in that it accepted jurisdiction over his bankruptcy petition and the adversary complaint, ultimately issuing its final decree on October 17, 2016, and administratively closing the matter on November 28, 2016.[11] Last, but not least, we agree with the Missouri Court of Appeals that "[d]omicile and residency . . . are not subjects to be taken lightly because they determine where we undertake some of our most important civic duties including, inter alia, paying taxes and voting," and that "the balance of equities firmly tip in favor of requiring candidates for public office" to "follow these fundamental guidelines." *Fletcher*, 337 S.W.3d at 144.

These reasons, when taken in the aggregate, compel us to conclude that the doctrine of judicial estoppel must apply to this case. "While it may appear that the application of judicial estoppel is harsh or unfair, the integrity of the bankruptcy system and judicial comity is more important than any single case, including this one."[12] *Arruda v. C & H Sugar Co., Inc.*, No. 2:06-cv-2308-MCE-EFB, 2007 U.S. Dist. LEXIS 16519, at *17

---

[11] In his appellate brief, Rodriquez maintains that he obtained no benefit from indicating on his bankruptcy petition that he was a resident of Tennessee. However, as we explained above, this Court agrees with the analysis of the *V.I. Taxi Association* court — which the Superior Court also expressly adopted in its January 5, 2017 opinion — that "the 'success test' relies too heavily on a party's success with their inconsistent position rather than considering the harm caused by the fraud to the Court." 2016 V.I. LEXIS 69, at *48. Consequently, the fact Rodriquez could potentially have invoked the Bankruptcy Court's jurisdiction on grounds other than his Tennessee residency — yet did not do so — is not relevant to the judicial estoppel inquiry.

[12] As noted above, one of the purposes of the judicial estoppel doctrine is to prevent the same matter involving the same party being adjudicated differently in two different courts due to a party taking a different position when it suits him. *Association Resources, Inc.*, 2 A.3d at 891 (quoting *Simon*, 128 F.3d at 71). In this case, the Superior Court, in holding that the evidence introduced at trial indicated that Rodriquez was a bona fide resident of the Virgin Islands for the past three years, expressly found that Rodriquez's representations in his bank-

(E.D. Cal. Mar. 8, 2007) (unpublished). Thus, we conclude that the Superior Court erred when it held that Rodriquez should not be judicially estopped from contradicting the statements he made in the bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Tennessee.

## C. Preliminary Injunction Pending Remand

██ Because application of judicial estoppel to this case precludes the Superior Court from considering the evidence of Rodriquez's residency introduced at the hearings in this matter — no matter how compelling, *see Fletcher*, 337 S.W.3d at 140 — Sarauw and Berry must, as a matter of law, prevail on the merits of their claim that Rodriquez does not meet the qualifications set forth in section 6 of the Revised Organic Act so as to permit him to serve in the 32nd Legislature.[13] This, however, does not fully resolve all of the issues involved in this appeal. It is clear that actual success on the merits alone is ordinarily not sufficient to obtain a permanent injunction as of right. *See James v. Richman*, 547 F.3d 214, 217 (3d Cir. 2008). Because many injunction factors involve questions of fact, and the ultimate decision to grant or deny a permanent injunction after weighing those factors is ordinarily reviewed only for abuse of discretion, *see Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 698 (V.I. 2011), this Court has held that the Superior Court must make findings on every injunction factor. *See 3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 557 (V.I. 2015). Consequently, the failure of the Superior Court to make any findings on any other relevant permanent injunction factors

---

ruptcy petition that he lived in Tennessee "have been rebutted by undisputed witness testimony." Thus, to reach this conclusion, the Superior Court necessarily determined that the statements Rodriquez made in connection with the proceeding in the United States Bankruptcy Court for the Middle District of Tennessee were false. This necessarily interferes with the serious judicial interest in ensuring comity between courts. *Bryan v. Fawkes*, 61 V.I. 416, 454 (V.I. 2014); *Simon v. Joseph*, 59 V.I. 611, 629 (V.I. 2013). Application of the judicial estoppel doctrine, however, would eliminate the need for the Superior Court — as part of this proceeding — to in effect determine whether Rodriquez lied or misled the Bankruptcy Court, since the Superior Court would simply hold Rodriquez to the representations he already made in the bankruptcy proceeding.

[13] For this reason, we need not consider any of the other claims Sarauw and Berry raise in their appellate brief.

necessitates that this matter be remanded to the Superior Court for further proceedings.[14]

Other matters remain unresolved as well. As we noted in our prior opinion in this matter, Sarauw and Berry have taken the position "that Sarauw, as the recipient of the eighth-highest number of votes, should be deemed the seventh-highest vote-getter in the event Rodriquez is disqualified, and therefore be certified as a member of the 32nd Legislature," notwithstanding "the well-established principle that votes cast for an unqualified candidate are not in and of themselves void and that the effect of the disqualification of a candidate subsequent to the election is that . . . the truth and legitimate will of the people has not yet been expressed." *Fawkes*, 66 V.I. at 252 n.9 (internal quotation marks omitted). This issue, however, was never addressed by the Superior Court, likely due to its decision to dismiss Sarauw and Berry's claims with prejudice. In fact, the Superior Court has to date not expressly identified the precise legal basis for Sarauw and Berry to challenge Rodriquez's eligibility to serve in the 32nd Legislature. *See Haynes v. Ottley*, 61 V.I. 547, 569-71 (V.I. 2014) (noting that the qualifications of a prospective officeholder may be challenged through several non-exclusive means, such as a taxpayer suit under 5 V.I.C. § 80, an action for a writ of mandamus, or an action for a writ of quo warranto).

In their appellate brief, Sarauw and Berry, recognizing the possibility that it may not be possible for all of these issues to be resolved on remand prior to the swearing-in of the 32nd Legislature on January 9, 2017, request that this Court issue its own order enjoining Rodriquez from being administered the oath of office — in effect, to reinstate the preliminary injunction that the Superior Court had ordered on December 9, 2016, and which this Court affirmed on January 4, 2017.

 This Court unquestionably has the power to grant such an injunction incidental to this appeal. *See* 4 V.I.C. § 32(b) ("The Supreme Court shall have all inherent powers, including the power to issue all writs

---

[14] In its January 5, 2017 opinion, the Superior Court correctly recognized that this Court has not determined the elements of a permanent injunction, and performed a *Banks* analysis to determine the best common-law rule. We agree with the Superior Court that the factors that govern a permanent injunction are essentially the same as those that govern a preliminary injunction, except that the movant must demonstrate actual success on the merits rather than a mere likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987).

necessary to the complete exercise of its duties and jurisdiction under the laws of the Virgin Islands. The Supreme Court's authority also includes jurisdiction of original proceedings for . . . injunction . . . and similar remedies to protect its appellate jurisdiction."). We conclude that reinstatement of a preliminary injunction is necessary, not just for the reasons outlined in the earlier opinions of this Court and the Superior Court granting similar relief, but because the failure to allow these judicial proceedings to take their natural course may result in irreparable harm to Sarauw and Berry — who could potentially be foreclosed from the equitable relief they have sought despite having succeeded on the merits[15] — as well as to the public, who possess an interest not just in ensuring that the laws of the Virgin Islands are enforced, but that their elected officials are qualified to serve. *See Bryan v. Fawkes*, 61 V.I. 416, 472 (V.I. 2016).

---

[15] We recognize that the parties, as well as the Superior Court, have proceeded on the assumption that the Superior Court will be divested of its jurisdiction to consider this matter once the 32nd Legislature comes into existence on January 9, 2017. If correct, this may — as a practical matter — prevent the Superior Court from taking any further action on remand. This, however, cannot serve as a justification for not remanding the matter to the Superior Court, since "[t]he Superior Court shall be deemed always open for the filing of any emergency paper, of issuing and returning any emergency process and of making emergency motions and orders." *Stiles v. Yob*, S. Ct. Civ. No. 2016-0027, 65 V.I. 234, 2016 V.I. Supreme LEXIS 26, at *12 n.7 (V.I. July 13, 2016) (unpublished) (quoting SUPER. CT. R. 2).

In any case, we note that the parties and the Superior Court relied on language in our decision in *Bryan v. Fawkes*, 61 V.I. 201, 216 (V.I. 2014), in which we held that

> section 6(c) of the Revised Organic Act, as well as the local statutes enacted by the legislature pursuant to that provision, contemplates that an elected Board of Elections will administer the elections system — including enforcing the requirements of section 6(b) — before a particular legislature convenes, and that power will shift from the Board of Elections to that legislature pursuant to section 6(g) only after the election has concluded and that legislature has actually convened.

However, we note that this holding was issued in the context of a pre-election challenge to a candidate's placement on the ballot pursuant to 18 V.I.C. § 412, whereas the instant case involved a post-election challenge to the eligibility of a candidate who has been certified as a senator-elect. Moreover, we note that at least one court of last resort has recently held that — notwithstanding constitutional language providing that the legislature is the sole judge of the qualifications of its members — has rejected the theory of "evaporating jurisdiction" and held that a court retains jurisdiction over all aspects of a qualifications challenge so long as judicial review is initiated before the new legislature convenes. *Stephenson v. Woodward*, 182 S.W.3d 162, 171-72 (Ky. 2005). In any event, to the extent the Superior Court is unable to resolve all aspects of this case on remand before the swearing-in of the 32nd Legislature, we find it appropriate for the Superior Court to determine, in the first instance, whether the circumstances of this case warrant abdicating its continuing jurisdiction.

## III. CONCLUSION

The Superior Court committed reversible error when it declined to apply the doctrine of judicial estoppel to Rodriquez's prior inconsistent representations as to his residency and domicile. Because Rodriquez represented in the bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Tennessee that he lives in Tennessee, that he has lived nowhere other than Tennessee for the past three years, and that is a resident and citizen of Tennessee, and the totality of the circumstances warrants application of the judicial estoppel doctrine, he is bound to his prior representations and cannot claim in this proceeding to have been a bona fide resident of the Virgin Islands during the same time period. Consequently, we vacate the Superior Court's January 5, 2017 opinion and order, remand this matter to the Superior Court, and order that Rodriquez be enjoined from taking the oath of office until such time as relief is provided by this Court, which shall occur no sooner than the completion of all proceedings on remand related to Sarauw and Berry's request for a permanent injunction, as well as any associated appeal.